BANK OF SENECA, Appellant, v. FIRST NATL. BANK OF CARTHAGE, Respondent.

Kansas City Court of Appeals, February 15, 1904.

1. **BANKS AND BANKING:** Letter of Credit: Exhaustion of. Whether a person who advances money on a letter of credit the limit of which has already been exhausted without his knowledge, can recover of the writer, *quaere*.

2. ———: ———: **Claims Upon: Scienter.** A party seeking reimbursement against the writer of a letter of credit must show that he acted on the faith of the letter; and where he had no knowledge of the letter his claim must fail.

3. ———: ———: ———: ———. Defendant bank issued its letter of credit for $1,000. Plaintiff bank on the faith of the letter paid the holder's checks to the amount of $500 at one time. Thereafter a third bank paid checks of the holder without any knowledge of the letter and the defendant bank took them up and charged them against the letter. Thereafter plaintiff bank paid other checks of the holders for $500 which defendant bank refused to take up since the letter had been exhausted by the checks of the third bank. *Held*, it was liable to plaintiff for the latter checks.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED (*with directions*).

*Geo. Hubbert* for appellant, filed extended argument.

*E. O. Brown, Geo. W. Crowder* and *Howard Gray* for respondent.

(1)    A person making advances on the faith of a letter of credit which authorizes the bearer to draw for a limited amount only, is bound to make the necessary inquiries to learn that such amount has not been ex-

hausted; and if, without making such inquiry he advances money on the faith of a check drawn according to the terms of the letter, he can not recover where the person in whose favor it is written has already drawn for the full amount specified. Or, to state it differently, the burden rests upon the person making such advances to determine at his peril whether the amount for which the letter of credit is given has been exhausted. Ranger v. Sargent, 36 Tex. 26; Nisbitt v. Galbraith, 3 La. Ann. 690; 18 Am. and Eng. Ency. Law (2 Ed.), 835; 2 Daniel on Neg. Instruments (4 Ed.), 818. (2) The instructions asked by plaintiff and refused by the court do not correctly express the rule of law applicable to this case, and, therefore, were properly refused. They made the defendant liable for the advances made by plaintiff regardless of the fact that the letter of credit had already been drawn on to the full amount specified therein.

ELLISON, J.—The defendant bank issued to H. G. Tanger and delivered to his agent, George W. Hawk, the following letter of credit:

("Letter of Credit.)
"First National Bank, Capital Stock $100,000.
"Carthage Mo., July 8, 1901.
"*To Whom it May Concern*:
"We will pay checks signed H. G. Tanger by the bearer, Geo. W. Hawk, to the amount of one thousand dollars, any checks paid indorse on back of this letter. Mr. Hawk's signature is below.
"Geo. W. Hawk.   V. A. Wallace, Vice Pres."

Said letter was indorsed on the back as follows:

"7-17—10 checks .... .... ..... .$500.25
7-25— 1 check, J. G. Johnson... 235.00  Seneca, Mo.
7-25— 1 check, J. D. Gallemore. 240.00   ,,     ,,

7-25— 1 check, G. W. Hawk.... 24.75      ''      ''

"$1,000.00."

Hawk was engaged in going over the country buying mules for Tanger and he was given the letter of credit to facilitate that business. After receiving the letter on July 8th, he went into the adjoining county of Newton and on July 17th he drew and negotiated ten checks aggregating $500.25, which were duly indorsed on the back of the letter and paid by defendant. Then, on July 25th, he presented the letter to the plaintiff bank and on the faith thereof plaintiff allowed him to draw and negotiate to it, three checks on defendant, one for $235, one for $240, and one for $24.75, aggregating $499.75, being balance of the amount limited in the letter. These were separately indorsed on the back of the letter. The smallest of these was for expense money and the other two were for mules purchased. The defendant bank refused payment of these checks on the ground that before they were negotiated to plaintiff, Hawk had exhausted the sum limited in the letter by checks to other parties, which had been duly paid by defendant.

It appears that before negotiating these checks, Hawk, leaving the letter behind, went into another county and there bought mules and, on July 10 and 13, negotiated checks to a bank at Pineville in that county aggregating $389.80. These checks were negotiated to that bank without Hawk exhibiting the letter of credit and with no knowledge on the part of that bank that there was a letter of credit. It was these last checks which defendant bank paid; and these with the $500.25, which it had before paid, made a total payment of $890.05, and lacked $109.95 of being the amount named in the letter.

On these facts the trial court took the view that the checks negotiated to the bank at Pineville and paid by defendant went to the discharge of the letter of credit,

and rendered judgment for the plaintiff for its smallest check of $24.75. The reason, as we gather it, for rendering judgment for only $24.75, when the letter after allowing for the checks at Pineville lacked $109.95 of being exhausted, was that that sum would not pay either of the other of plaintiff's checks in full.

The parties have discussed at length the question whether a person who has advanced money on the faith of a letter of credit, the limit of which the holder had already exhausted by negotiations with others without that person's knowledge, can recover of the writer. Putting aside considerations of equity, which sometimes arise, and looking upon it as a legal question, there is strong authority for saying that he can not. Ranger v. Sargent, 36 Tex. 26; Roman v. Serna, 40 Tex. 306. Though we need not say.

For any such question is excluded from this case by the facts preserved in the record. The letter being addressed to "whom it may concern;" and being intended for use with different persons at different times and at various places, was a general letter of credit, and it was what has been aptly termed a circulating promise to pay Tanger's checks, signed by Hawk, up to the amount of $1,000. But it is a fundamental rule governing this sort of commercial paper that no one has any claim because of it, against the writer, unless he knew of its existence and advanced his money on the faith of it. McClung v. Trevor, 4 Ohio 196; Pollock v. Helm, 54 Miss. 1; Grant v. Naylor, 4 Cranch. 224; Sherwin v. Brigham, 37 Ohio St. 137; Birkhead v. Brown, 5 Hill 643; Russell v. Wiggin, 2 Story 235-241; Union Bank v. Coster, 3 Comstock 203; Blecker v. Hyde, 3 McLean 279. That the party making claim of reimbursement against the writer must show that he acted on the faith of the letter, is a requisite that appears in all writing upon this and kindred subjects. It so appears in adjudicated cases and is accepted, as of course, by text-writers. See 2 Daniel on Neg. Inst., secs. 1790-1798; Coolidge v. Pay-

son, 2 Wheat. 264; Schemmelpennick v. Bayard, 1 Peters 264; Boyce v. Edwards, 4 Peters 111.

The liability of a writer of a letter of credit is founded on the simple law of contracts where the minds of the parties must meet in the common purpose. The act of the writer is an offer, or request, or proposition, and the act of him who furnishes the money is an acceptance. So it is understood that a general letter of credit is considered as addressed to whomsoever will act upon it and when acted upon, the contract is made up upon which the writer may be held liable. Necessarily, where one furnishes another money without knowledge that such other has a letter of credit, he is a stranger to the letter; and when he comes to set it up as the foundation upon which to recover against the writer, he should be regarded as an interloper without a shadow of right.

By these remarks we aim to demonstrate that when the bank at Pineville, without sight or knowledge of the defendant's letter, paid Tanger's checks drawn on the defendant bank, that act, necessarily, was not based on the letter, and in consequence, no contractual relation arose between it and the defendant bank. And when the defendant bank paid the checks to the Pineville bank, it was merely the consummation of an ordinary transaction wholly disconnected and apart from the letter. The sum thus paid could not be applied towards extinguishing the amount named in the letter. The sum so paid only became a debt owing from Tanger to the defendant and had no more to do with the letter than any other debt he might have owed to it. That the payment of the Pineville checks could have no connection with the letter is apparent by the suggestion that if the defendant bank had not paid those checks and had asked that the Pineville bank and this plaintiff interplead for the money, which would have prevailed; the plaintiff, who relied upon the letter and complied with it, or the Pineville bank who knew nothing of its existence?

It can make no difference that the defendant may have thought and assumed that the Pineville checks were cashed by that bank on the faith of the letter it gave into Hawk's possession. If Hawk acted irregularly and without authority in dealing with the Pineville bank, such act ought not to be allowed to injure the plaintiff bank, where his act was regular and within authority. If Hawk's act must harm one of two innocent parties, it should fall on the one who put him in position to do the harm.

From these considerations it follows that the defense wholly failed and that plaintiff should have had judgment in the trial court for the whole sum it advanced. The judgment is therefore reversed and the cause remanded with directions to so enter it. All concur.