### McKINNON v. BOARDMAN.

(Circuit Court of Appeals, Second Circuit. May 19, 1909.)

#### No. 240.

GUARANTY (§ 35*) — UNAUTHORIZED INDORSEMENT OF CHECK — LIABILITY ON GUARANTY OF INDORSEMENT.

Where the indorsement of the payee's name on a check was without authority, but was guaranteed by a bank, and on such guaranty the check was paid, the guarantor is liable for any loss sustained thereby by the paying bank.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 35.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 164 Fed. 527. See, also, 169 Fed. 496.

On writ of error to the Circuit Court for the Southern District of New York to review a judgment entered upon findings by the court (a jury having been duly waived) in favor of the defendant in error (plaintiff below) for $106,233.34. The action was originally brought against Charles A. Hanna, as receiver of the National Bank of North America in New York. After judgment and on November 17, 1908, by consent of both parties, the action was continued in the name of John W. McKinnon, as agent for the share-

holders of the said bank, and he was duly substituted as defendant in the place and stead of the said Hanna.

The complaint alleges that on May 6, 1907, the Mercantile National Bank of the City of New York made a check upon itself directing the payment of $100,000 by itself to Morgan J. O'Brien, or order, and immediately delivered the check to Charles W. Morse, who on the same day indorsed the same in the name of O'Brien and delivered it to the National Bank of North America. The check and indorsements are as follows:

"No. 27578 L                                    New York, May 6, 1907.

"The Mercantile National Bank of the City of New York: Pay to' the order of Morgan J. O'Brien, one hundred thousand dollars.

"$100,000.                                    Miles M. O'Brien, V. P.

Indorsed: "Morgan J. O'Brien, per C. W. Morse." "Pay to the National Bank of North America in New York, N. Y., or order. C. W. Morse." "Indorsements guaranteed. The National Bank of North America in New York."

The said Bank of North America, having indorsed the said check, presented the same for payment through the New York Clearing House and it was duly paid by the Mercantile National Bank.

The complaint further alleges that the indorsement by Morse of O'Brien's name was made without the authority, knowledge or consent of O'Brien; that the check with all rights thereunder was transferred to plaintiff and demand for payment of the amount received by the National Bank of North America was made and refused.

The defendant denies that the indorsement of O'Brien's name on the check was without his knowledge and consent, alleges that he has no knowledge of the assignment of the chose in action to plaintiff, and denies, on information and belief, that no part of the $100,000 has been paid.

For a first separate defense the defendant alleges, on information and belief, that in January, 1907, Morse sold to O'Brien 1,000 shares of the capital stock of the National Bank of North America and received in payment therefor $100,000 in cash and two notes for $100,000 each to the order of himself and by him indorsed in blank and delivered with the $100,000 in cash to said Morse; that on May 6, 1907, Morse discounted one of the said notes to the Mercantile National Bank and received a cashier's check of the said bank therefor drawn to the order of said O'Brien, which check is the one mentioned in the complaint; that in July, 1907, the said note matured and the amount thereof was duly paid by said O'Brien to the Mercantile National Bank and the note was delivered by it to him; that by reason thereof neither the bank nor its assigns have suffered any loss or damage by the payment of the said check to the National Bank of North America and the Mercantile Bank is not liable to any one because of such payment.

For a second separate defense the defendant, repeating the allegations of the first separate defense, alleges on information and belief that after the payment and discharge of the said note and check for $100,000 each, Morse repurchased from O'Brien so much of the stock of the National Bank of North America theretofore sold by the said Morse to the said O'Brien as was represented and paid for by the two promissory notes before mentioned and paid therefor to O'Brien the same purchase price as the price at which the said O'Brien had theretofore purchased the stock from the said Morse, to wit, $200,000, and thereupon said Morse received full acquittance from the said O'Brien of all claims arising out of the said transactions between them; that by reason of the facts aforesaid the said O'Brien has suffered no loss by reason of the payment of said check of $100,000 to the National Bank of North America and neither O'Brien nor the plaintiff has any claim against the Mercantile National Bank thereon.

Underwood, Van Vorst & Hoyt (J. Markham Marshall, of counsel), for plaintiff in error.

Parker, Hatch & Sheehan (Alton B. Parker and Henry W. Clark, of counsel), for defendant in error.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). The allegations of the complaint were found to be facts in the exact language as pleaded. But three witnesses were called—Morgan J. O'Brien, Miles M. O'Brien and the plaintiff. Morgan J. O'Brien testified as follows:

"I never gave C. W. Morse a written power of attorney. I did not authorize him to indorse the check in my name. I do not know that indorsement nor do I know the time it was made. It was done without my knowledge and consent."

Morse was not called as a witness, and the above testimony stands wholly uncontradicted. It is plain, therefore, that the indorsements by Morse were unauthorized and that the check would not have been paid but for the guaranty of the indorsements by the National Bank of North America.

The note presented for discount was signed by Morgan J. O'Brien payable to his own order and was indorsed by him, the check of the Mercantile National Bank was made out to his order and the money would, presumably, have been paid to him but for the fact that Morse indorsed O'Brien's name "per C. W. Morse" and also indorsed his own name and procured both to be guaranteed by the National Bank of North America. Miles M. O'Brien, vice president of the Mercantile Bank, testified:

"I made out the check to Morgan J. O'Brien. I did that because the note was his. I wanted him to get the money."

Whether a check payable to Morse would, upon request, have been made in exchange for the check as made is, of course, problematical. The facts do not warrant the conclusion that compliance with such a request could have been compelled. It is enough, however, that no such request was made.

The note was discounted at the request of Morse, but there is no finding that the proceeds of the discount were solely for his benefit. The inference from the facts as they occurred at the bank would seem to point to a different conclusion. But, however this may be, there can be no doubt that Morse sold the note without authority, received a check which he could not legally cash and was enabled to procure the money by an indorsement which he was not authorized to make and by procuring a guaranty of the indorsements by the Bank of North America. In other words, the bank's guaranty procured the money.

Those who have relied upon the bank's assurance that these indorsements were authorized and have lost thereby, are entitled to redress. The Circuit Court found:

"That said note discounted by the Mercantile National Bank of the City of New York at the request of said Morse, was delivered by said O'Brien to said Morse under an agreement between them that said Morse should retain the same in his possession, and renew the same, at the maturity thereof, which said agreement was in full force and effect between said O'Brien and said Morse on the 6th day of May, 1907, when said note was discounted by the Mercantile National Bank of the City of New York at the request of said Morse."

It is true that on June 17, 1907, six weeks after the check was paid, an agreement was made between Morse and O'Brien and his

partners changing materially the original understanding between Morse and O'Brien. As Morse had already discounted the note in question he quite naturally refused to have inserted a clause providing that he was to retain the notes in his possession. But even if the elimination of this clause might be considered as permitting future discounts it could have no retroactive effect and change the status of the transaction of May 6th, which was already established.

In no sense can it be considered a ratification of Morse's act for the reason, among others, that O'Brien did not know of the occurrences of May 6th until after October 22d when the note matured. It must be remembered that this is an action at law based upon the guaranty by the Bank of North America of unauthorized indorsements on the cashier's check. The controversy must be determined upon the facts as they existed at the time these indorsements were made, uninfluenced by subsequent occurrences arising under changed conditions. As pointed out by the trial judge these matters may be available in an equity action for an accounting but cannot be considered here. The acts of Morse in selling the note and in indorsing O'Brien's name upon the check were wholly unauthorized. The Mercantile Bank was induced to accept them as genuine because of the guaranty of the Bank of North America and we agree with the trial judge in thinking that these facts give to the plaintiff, who succeeds to the rights of the Mercantile Bank, a good cause of action against the Bank of North America which was paid the money because of its guaranty.

The judgment is affirmed.