AMERICAN NATIONAL BANK OF MACON, GEORGIA, Respondent, v. JOSIAH PILLMAN et al., Appellants.

### St. Louis Court of Appeals, July 5, 1913.

1. **GUARANTY: Acceptance: When Necessary and When Not.** When the instrument relied on as a guaranty is merely an offer to make good the default of another, an acceptance of such offer must be made within a reasonable time, in order to constitute a valid contract of guaranty; but where the guarantor, with full knowledge of the extent of his obligation, agrees absolutely to pay the obligation assumed, notice of acceptance by the other party is not essential.

2. ———: ———: ———. Defendant, who was engaged in purchasing peaches, addressed a letter to plaintiff bank as follows: "Please honor M.'s drafts on us for $1.25 per crate to the extent of six cars of peaches. We shall protect same at this end and in case we do further business, we will advise you later." The bank honored such drafts within eight days after receiving the letter. In an action by the bank on the contract of guaranty, *held* that the letter was not a mere offer of guaranty as to advances by the bank, but was an absolute guaranty, so that no acceptance by the bank was necessary, other than its action in honoring the drafts.

3. ———: **Defenses: Breach of Contract by Principal.** Where a guaranty of drafts drawn for the price of peaches sold to guarantor did not require a bank honoring the drafts in reliance on the guaranty to inspect the peaches, it was not liable to guarantor because of their defective quality.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen*, Judge.

AFFIRMED.

*Dawson & Garvin* for appellant.

(1) The letter sued on is not a direct promise, but merely a prospective or contingent guaranty and required a distinct notice of acceptance by the bank. The judgment should be reversed for error of the trial court in holding the latter to a binding contract whenever acted upon by plaintiff without regard to whether defendants were ever apprised of that fact or not. Bank v. Goldstein, 86 Mo. App. 516; Bank v. Shine, 48 Mo. 456; Brown v. Rice, 29 Mo. 322; Mfg. Co. v. Isaacs, 144 Mo. App. 58; Plow Co. v. McCullough, 102 Mo. App. 458; Harvester Co. v. Sulser, 78 Mo. App. 670; Sewing Mach. Co. v. Richards, 115 U. S. 524. (2) Defendants' refusal to pay the draft dated July 17, 1909, before plaintiff had cashed it, is equivalent to a withdrawal of defendants' letter of request and promise. Cashing the draft after notice of such refusal did not give plaintiff any cause of action against defendants for refusing to pay said draft. Brown v. Rice, 29 Mo. 322; Weaver v. Wood, 9 Pa. St. 220. (3) In the absence of subsequent agreements the rights and liabilities of parties to any contract become and are fixed when the contract is breached by either party; and the other party cannot recover any damages which could be reasonably avoided by him after knowledge of the others' breach, and evidence of such facts should be admitted. Peck & Co. v. Roofing & Corrugating Co., 96 Mo. App. 212; State ex rel. v. McCarthy, 134 Mo. App. 632; Taussig v. M. & L. Co., 124 Mo. App. 209; Ice Co. v. Tamm, 90 Mo. App. 189; Vencill v. Railroad, 132 Mo. App. 722; Douglass v. Stephens, 18 Mo. 362; Kansas City v. Morton, 117 Mo. 446; State ex rel. v. Harrington, 44 Mo. App. 297; Coal Co. v. Brick Co., 66 Mo. App. 296; Lewis v. Ins. Co., 61 Mo. 534; 8 Am. & Eng. Ency. of Law (2 Ed.), 605.

*Thos. D. Cannon* for respondent.

(1) (a) Appellants' letter (Exhibit A) dated July 7, 1909, to the respondent is a letter of credit, of frequent use in commerce, and while not possessing all of the characteristics of negotiability which pertain to bills and notes, partakes of them to such extent as to be necessarily classed as a negotiable instrument. Liggett v. Bank, 233 Mo. 590-598. (b) Appellants' letter of credit dated July 7, 1909, was an original, absolute and direct obligation of the appellants, and no notice of acceptance by the bank was required; it was not such a commercial guaranty as required acceptance. The act of respondent in cashing the drafts of H. T. Montgomery & Co. in reliance upon the letter of credit was an acceptance of appellants' proposal which made a binding contract. Bank v. Stewart, 152 Mo. App. 314; Bank v. Shea, 57 Minn. 180; Lonsdale & Gray v. Bank, 18 Ohio, 126, 142; Bank v. Commission Co., 139 Mo. App. 110; Bank v. Bank, 105 Mo. App. 722. (2) The appellants' letter of credit dated July 7, 1909, did not define the quality of the peaches to be shipped, and no duty devolved upon the respondent bank to ascertain before receiving and cashing the drafts drawn by H. T. Montgomery & Co., whether the peaches actually shipped in the six cars, corresponded in quality with those ordered. The con tract of respondent bank and appellants must depend upon what took place between them and cannot be affected by the dealings between appellants and Montgomery & Co. Valle v. Cerre's Adm'r, 36 Mo. 575; Bank v. Tayleur, 16 La. 490; Posey v. Bank, 24 Colo. 199; Hall v. Bank, 133 Ill. 234; Union Bank v. Shea, 57 Minn. 180, 187; Lonsdale v. Bank, 18 Ohio, 126, 138; In re Agra & Bank, 4 Eng. R. Cas. 612; Beneckle v. Habbler, 58 N. Y. Sup. 16; Russell v. Wiggins, 2 Story, 213. (3) In the case at bar, the appellants received and accepted the whole six carloads of peaches referred to in their letter of credit, shipped by Montgomery &

Co., with full knowledge that drafts had been drawn upon them against the shipment. The letter of credit was never revoked; respondent had a right to rely upon it, and cash the six drafts; appellants cannot be permitted to return the six carloads of peaches or the proceeds thereof, and repudiate their letter of credit by dishonoring the last draft. Hall v. Bank, 133 Ill. 234, 243; Nutting v. Sloan, 57 Ga. 397; 1 Parsons on Bills, 291; Riggs v. Lindsay, 7 Cranch, 500. (4) The court properly denied the appellants the right to introduce evidence to support their counterclaim; it stated no cause of action against the respondent; the appellants well knew that the respondent was a national bank only, and knew that it was not engaged and could not engage in the produce business either as a partner or otherwise. Bank v. Baird, 160 Fed. 642; Cooper v. Hill, 94 Fed. 582; Bank v. Wehrmann, 202 U. S. 295; State ex rel. v. Bank, 157 Mo. App. 557; Littleton v. Bank, 63 N. W. 666.

NORTONI, J.—This is a suit on a contract of guaranty. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff, incorporated for that purpose, conducts a general banking business at Macon, Georgia, and defendants are engaged in the fruit business in the city of St. Louis, under the firm name of Pillman Bros. H. T. Montgomery & Co. were engaged in purchasing peaches in the vicinity of, and shipping them from, Macon, Georgia, to fruit dealers throughout the country. In order to prosecute this business and have constantly on hand available funds, H. T. Montgomery & Co. arranged with plaintiff bank to cash such drafts as might be drawn by them on solvent customers who agreed in advance to honor the drafts when presented for peaches shipped by H. T. Montgomery & Co. to such customers.

H. T. Montgomery & Co. negotiated a sale of six carloads of first-class, merchantable peaches to defendants, Pillman Bros., in St. Louis, and, to the end of receiving immediate compensation therefor, required Pillman Bros. to assure plaintiff bank that they would accept drafts drawn by Montgomery & Co. upon them for the peaches when laden in the cars in Georgia. In accordance with this arrangement, Pillman Bros. wrote plaintiff bank instructing it to honor such drafts as were drawn by Montgomery & Co. on them for $1.25 per crate, to the extent of six cars of peaches. This letter contained the further assurances on the part of Pillman Bros. that "We shall protect same at this end and in case we do further business, we will advise you later." The letter was dated July 7th and received by plaintiff bank on July 9th. Though the plaintiff bank immediately acknowledged receipt of the letter, it made no formal acceptance, as if a proposition were contained therein calling for such. A few days thereafter, Montgomery & Co. shipped a carload of peaches to Pillman Bros., and drew a draft with bill of lading attached on Pillman Bros. for the amount due thereon through plaintiff bank, which draft was paid by the bank and the proceeds passed to the credit of Montgomery & Co. On presentment, the draft was duly paid by Pillman Bros. in St. Louis. Subsequent to this and within a few days thereafter, H. T. Montgomery & Co. shipped four other cars of peaches to Pillman Bros. in St. Louis and drew drafts likewise on them for the respective amounts due on each shipment. A bill of lading was attached to each of the drafts. Plaintiff bank paid these several drafts and passed the proceeds thereof to the credit of Montgomery & Co. in their account. Each of these drafts was promptly paid by defendants when presented in St. Louis.

The sixth and last car of peaches contemplated in the original contract of purchase between Pillman Bros. and H. T. Montgomery & Co. was shipped on

July 17th. At the time the contract of purchase was made between the parties, Pillman Bros. paid Montgomery & Co. thereon $300, which, according to the contract, was to be applied on the purchase price of the last or sixth car of peaches shipped. Upon the shipment of the last car, there remained due, however, to Montgomery & Co. the amount of $316.25 from Pillman Bros. Such, together with $2.50 protest fee, is the amount involved in the present controversy, for upon the shipment of the last or sixth car, July 17th, H. T. Montgomery & Co. drew their draft, with bill of lading attached, on Pillman Bros. for such balance due, $316.25. Plaintiff bank accepted this draft, in accordance with the letter of Pillman Bros. of date July 7th, and passed the proceeds thereof to the credit of H. T. Montgomery & Co. In due course, the draft was presented to Pillman Bros. in St. Louis but dishonored by them and went to protest. Pillman Bros. having declined to pay the draft, though it appears they actually received and accepted the carload of peaches against which it was drawn, plaintiff bank instituted this suit against them to recover the amount paid out by it to Montgomery & Co. at defendants' instance and request.

It is argued that plaintiff is not entitled to recover for the reason it did not formally accept the proposition of Pillman Bros. to protect and pay the drafts which might be drawn against them by Montgomery & Co. through the bank. There can be no doubt that where the instrument relied upon as a guaranty is merely an offer or proposition to make good the default of another with respect to the payment of future advances to be made by the proposed guarantee to the principal of the guarantor, an acceptance of such proposition should be signified within a reasonable time, to the end that a meeting of the minds touching the subject-matter may be revealed. Such, it is said,

is a reasonable rule, for it enables the guarantor to know the measure and extent of his liability and also to exercise due vigilance in guarding himself against losses which may otherwise be unknown to him and to avail himself of the appropriate means in law and equity to compel the other parties to discharge him from further responsibility. [See Central Savings Bank v. Shine, 48 Mo. 456; Davis v. Wells, 104 U. S. 159, 14 Am. & Eng. Ency. Law (2 Ed.), 1146.] But though such be true, where a guaranty is absolute, no notice of its acceptance is necessary to fix the liability of the guarantor, unless notice be made a condition of the contract of guaranty itself. In other words, the rule requiring notice by the guarantee of his acceptance of a guaranty and of his intention to act under it applies only where the instrument, being in legal effect merely an offer or proposal, such acceptance is necessary to show a mutual assent, for, after all, it is purely a matter of contract, and without such mutual assent no contract appears. [See Davis v. Wells, 104 U. S. 159, 14 Am. & Eng. Ency. Law (2 Ed.), 1145.] This being true, the question essentially turns upon a construction or interpretation of the contract between the parties, for if it appears to be an absolute undertaking on the part of the guarantor, no notice of acceptance is required, and action with reliance thereon will suffice; while if a mere offer or proposition is presented, notice of acceptance is required. Therefore, the first step toward ascertaining the liability, in this, as in every other case of a guarantor, is to determine the meaning of his contract. [See Brandt on Suretyship and Guaranty (3 Ed.), sec. 103.]

The contract involved here appears in defendants' letter to plaintiff of date July 7th and which afforded the inducement to plaintiff in cashing the draft which defendant subsequently refused to pay. The letter is as follows:

"St. Louis, Mo., July 7, 1909.

"American National Bank, Macon, Ga.

"Gentlemen:

"Please honor H. T. Montgomery & Co.'s drafts drawn on us for $1.25 per crate, to the extent of six cars of peaches.

"We shall protect same at this end and in case we do further business, we will advise you later.

"Yours very truly,

"PILLMAN BROS.

Per (Signed)    J. PILLMAN."

It is certain that there is nothing in this letter suggesting that it contained a mere offer or proposition to make good future advances on the part of plaintiff to H. T. Montgomery & Co. Indeed, the letter opens imploringly, for defendants say, "Please honor H. T. Montgomery & Co.'s drafts." Having thus pointedly requested plaintiff to do so, the letter then continues with an absolute assurance to the effect that defendants would protect or pay the drafts when presented. The direct and absolute promise to this effect is vouchsafed in the following words, "We shall protect same at this end . . ." It would seem difficult to choose more direct and explicit language to make an absolute promise than that selected by the writer of this letter, when considered with the context employed.

As before said, the letter was received by plaintiff on July 9th and was acted upon within a very few days thereafter, for it appears that Montgomery & Co. shipped five cars of peaches and drew five drafts against them (all through plaintiff bank) on defendants before the present draft was drawn. Each of such drafts so drawn was honored by defendants when presented, until the one involved here. The instant draft was drawn on the 17th of July against the sixth or last consignment of peaches, and from this it appears but eight days elapsed between the date plaintiff received

defendants' letter of guaranty in the usual course of mail and complied fully with its part of the contract. Obviously such compliance within so short a time thus induced by defendants' letter supplied the elements of mutuality and consideration, essential to a completed contract. [Union Bank v. Shea, 57 Minn. 180; see also Underwood Typewriter Co. v. Century Bldg. Co., 118 Mo. App. 197, 94 S. W. 787; s. c., 220 Mo. 522, 119 S. W. 400.]

In such circumstances, it is entirely clear that no formal notice of acceptance prior to the actual cashing of the draft is essential in order to fix a complete liability therefor against defendants. No one can doubt that there is an obvious distinction between an overture or proposition of guaranty and a simple contract to be directly liable. [Brandt, Suretyship & Guaranty (3 Ed.), sec. 212; Carman v. Elledge, 40 Ia. 409; Barker v. Scudder, 56 Mo. 272, 276.] The reason of the rule which requires notice is, our Supreme Court has said, that the guarantor may know distinctly his liability and be enabled to arrange his relations with the party in whose favor the guaranty is given. If he makes a proposition for advancements, he should be informed of its acceptance, but where he directly agrees and binds himself to be answerable for a specific sum under certain designated circumstances, he knows and has the means within his own hands of determining the extent of his obligation. Therefore, when it appears that the guarantor, with full knowledge concerning the extent of his obligation, stipulates in direct and absolute terms to pay concerning the subject-matter of which he is advised at the time, no notice is essential. [See Barker v. Scudder, 56 Mo. 272, 276, 277; Allen v. Pike, 3 Cush. 238; Brandt, Suretyship & Guaranty (3 Ed.), sec. 212; see also Bank v. Stewart, 152 Mo. App. 314, 133 S. W. 70; Globe Printing Co. v. Bickley, 73 Mo. App. 499; Union Bank v. Shea, 57 Minn. 180.]

Defendants interposed a counterclaim, but the court declined to submit the issue tendered therein to the jury. It is argued this was error, but we are not so persuaded. The sum and substance of the counterclaim is to the effect that defendants entered into a written contract with H. T. Montgomery & Co. to purchase six cars of Elberta peaches to be paid for by means of the drafts drawn by them through plaintiff bank; that this contract called for first-class merchantable Elberta peaches and plaintiff knew such to be the requirement of the contract so made between defendant and H. T. Montgomery & Co. It is then averred that the peaches shipped by Montgomery & Co. to defendants were not first-class, merchantable Elberta peaches but were of an inferior quality and wormy, etc. It is then averred, touching this matter, ''That, nevertheless, the said bank took no pains and made no effort to see that the peaches shipped were merchantable, first-class stock Elberta peaches, and of the kind which were agreed to be shipped before they received or forwarded said drafts so drawn on Pillman Bros.'' Furthermore, because Montgomery & Co. shipped such inferior peaches to defendants, they lost a large amount of anticipated profits in handling the same, etc., for which judgment is prayed against plaintiff bank.

Obviously this answer revealed no cause of action against the bank. Though it be that Montgomery & Co. breached the contract with defendants and supplied them with inferior peaches, it is certain that the bank was under no obligation to inspect the peaches before shipment. The gravamen of the counterclaim seems to be that the bank neglected to ascertain whether or not the peaches so shipped were in accordance with the contract between defendants and Montgomery & Co. Although it be conceded that the bank knew the contract between these fruit dealers required a shipment of first-class, merchantable peaches, cer-

tainly no obligation was imposed thereby upon the bank to depart from its usual avocation and inspect the peaches before shipment. No such requirement is imposed by the contract between defendant and the bank and no evidence tending to prove an agreement to do so was offered at the trial. In such circumstances, the bank was not required to look beyond the face of the contract of guaranty, which imposed an absolute obligation on defendants without any suggestion whatever touching the character or quality of the six car loads of peaches purchased. Unless it became a party to the perpetration of a fraud with respect to defendant's rights, the bank discharged the full measure of its duty by cashing the drafts when presented and forwarding them for payment, and is in nowise concerned with the equities which may subsist between the parties—that is, defendants and Montgomery & Co. [See Valle v. Cerre's Admr., 36 Mo. 575; Benecke v. Haebler et al., 58 N. Y. Supp. 16. See, also, for another application of the principle, the case of Bank v. Bank, 105 Mo. App. 722, 78 S. W. 1092.]

What has been said sufficiently disposes of all of the relevant questions raised, and it is unnecessary to further prolong the opinion in the discussion of suggestions which are, obviously, without merit.

The judgment is manifestly for the right party and should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.