## BANK OF PLANT CITY v. CANAL-COMMERCIAL TRUST & SAVINGS BANK.

(Circuit Court of Appeals, Fifth Circuit. February 10, 1921.)

No. 3622.

1. **Guaranty ⬳35—Telegrams held to guarantee payment of draft not solvency of drawee.**

   Telegrams from one bank to another, one of which guaranteed payment of a sight draft with bill of lading covering carload of tomatoes attached and was confirmed by a letter expressing trust that the receiving bank had accepted the guaranty and would allow the draft to come direct for collection, and the other of which telegrams stated the sender would honor sight draft with bill of lading attached covering order of tomatoes, were independent guaranties of payment of the sight draft to the receiving bank, not merely guaranties of the solvency of the drawee and of his payment of the draft in case the tomatoes conformed to order.

2. **Guaranty ⬳34—Independent guarantor liable regardless of principal liability.**

   One who guaranteed the performance of an obligation by a separate and independent contract is liable on his guaranty regardless of the liability of the principal on the guaranteed obligation, especially where the obligation is a negotiable instrument and is guaranteed for the purpose of procuring its acceptance by a third person.

3. **Guaranty ⬳43—Bank held not required to inspect produce before honoring guaranteed draft.**

   A bank to which was presented a sight draft with bill of lading attached covering shipments of tomatoes already loaded was not obliged to inspect the shipments to ascertain their conformity to contract, before paying the drafts in reliance on the guaranty of payment by another bank, and the guarantor bank is liable on the guaranty even though the buyer of the tomatoes properly rejected them on arrival.

4. **Guaranty ⬳6—Formal acceptance held unnecessary.**

   Formal acceptance of a guaranty is unnecessary where it was made by telegram to insure payment of a sight draft with bill of lading attached covering a shipment of produce.

In Error to the District Court of the United States for the New Orleans Division of the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by the Bank of Plant City against the Canal-Commercial Trust & Savings Bank. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harry McCall, of New Orleans, La., for plaintiff in error.

Edwin T. Merrick and Henry P. Dart, Jr., both of New Orleans, La., for defendant in error.

Before BRYAN and KING, Circuit Judges, and ESTES, District Judge.

KING, Circuit Judge. On May 21, 1919, S. Segari & Co., of New Orleans, La., purchased from W. J. Hawkins, of Plant City, Fla., a carload of tomatoes. The sale was effected by telegrams. Hawkins on May 20th quoting a car of tomatoes, good stock, fancies $3, choice $2.75 per crate. On May 21st S. Segari & Co. accepted the offer, asking Hawkins to "wire confirmation with car number and manifest," to which on the same day Hawkins replied:

"Confirm order [is] wire money bank of Plant City. A. C. L. 38797. Heavy to fancies manifest not complete."

On May 21, 1919, bill of lading for car A. C. L. 38797 containing 534 crates of tomatoes consigned to S. Segari & Co. was issued.

On May 22, 1919, the Commercial Trust & Savings Bank telegraphed the Bank of Plant City, the plaintiff in error, as follows:

· "We guarantee payment sight draft W. J. Hawkins on S. Segari Company bill of lading attached to draft covering one car tomatoes shipped yesterday fancy three dollars crate choice two seventy five."

This telegram was followed by a letter from the Commercial Bank to the plaintiff in error dated May 22, 1919, which confirmed and quoted the telegram as above and concluded:

" * * * We trust that it has been convenient for you to accept our guaranty and that you will allow this draft to come to us direct for collection, we guaranteeing prompt payment."

On May 23, 1919, the Bank of Plant City cashed a sight draft drawn by Hawkins on S. Segari & Co. for $1,502 to which said bill of lading was attached, also a bill made out by Hawkins against S. Segari & Co, for 534 crates of tomatoes in car A. C. L. 38797, showing 365 crates fancies at $3 per crate, $1,095, and 148 crates choice at $2.75 per crate, $407, total $1,502, and 21 crates XX at $2 per crate (this last sum not being included in said draft), and credited Hawkins' bank account with said $1,502.

On May 23d Hawkins offered S. Segari & Co. another car of tomatoes, and on May 24th they wired accepting car, and stated they were wiring funds, asking a confirmation, with car numbers, by wire. Later in this day they telegraphed:

"Wired guaranty early this morning. Be sure ship today. Wire numbers."

Hawkins wired:

"Shipped today. Seaboard 22538. Five thirty one tomatoes."

On the same day the Canal Bank & Trust Company wired the Bank of Plant City as follows:

"We will honor sight draft of W. J. Hawkins bill lading attached covering car tomatoes on S. Segari & Company."

On May 26, 1919, the plaintiff in error received from Hawkins sight draft for $1,566 drawn by him on S. Segari & Co., to which was attached a bill of lading issued May 23, 1919, for 531 crates of tomatoes in car S. A. L. 22538 to S. Segari & Co. and a bill from Hawkins to S. Segari & Co. for $1,566, the price of said tomatoes, and credited Hawkins' bank account with said amount. The evidence is to the effect that these sums were immediately subject to Hawkins' check; that they were not applied to any debt then due by Hawkins to the plaintiff.

Both drafts were forwarded to the Commercial Bank, which turned over the second draft and papers attached to it to the Canal Bank.

The carloads of tomatoes, on arrival at New Orleans, were rejected by S. Segari & Co. as unmerchantable and not according to order and they refused to pay the drafts. The New Orleans banks declined to pay the same on the ground that the tomatoes shipped were not such as the contract of purchase called for; also that Segari & Co. had brought two suits in which injunctions had been issued restraining them from paying said drafts. The Bank of Plant City was not a party to either suit.

The Canal Bank & Trust Company having been consolidated with the Commercial Trust & Savings Bank under the name of Canal-Commercial Trust & Savings Bank, which became responsible for all liabilities of said Canal Bank & Trust Company and said Commercial Trust & Savings Bank, this suit was brought against it by the Bank of Plant City in the United States District Court for the Eastern District of Louisiana for the sum of $3,068, the principal of said drafts.

The plaintiff's testimony showed the shipment of the carloads of tomatoes, the cashing of the drafts as above stated, that it was done entirely on the faith of said guaranties, and that the plaintiff had never been repaid. At its conclusion the defendant moved for the direction of a verdict in its favor which motion was overruled.

The defendant introduced testimony as to the failure of the tomatoes to comply with the contract, and at the conclusion of the entire testimony the plaintiff moved for the direction of a verdict in its favor.

The court denied this motion and directed a verdict in favor of the defendant, and judgment accordingly was rendered.

The plaintiff sued out a writ of error to this court to review this judgment.

Error is assigned to the direction of the verdict in favor of the defendant and also to the admission of certain evidence.

In an opinion overruling a motion for a new trial the court stated the ground of his ruling as follows:

"In my conception of the case the guaranty was given by the defendant to Hawkins to guarantee Segari's debt to him. It was intended to guarantee the solvency of Segari and protect Hawkins against any unfair and arbitrary rejection of the tomatoes, provided they came up to specifications. It is a collateral engagement on the part of the bank for the benefit of Hawkins, and not an independent contract with the Bank of Plant City guaranteeing payments of Hawkins' drafts at all events. As Hawkins did not comply with his contract with Segari, no debt was created. There being no liability on Segari's part there can be none on the part of the defendant bank."

[1] In our opinion the court erred in directing a verdict for the defendant. The guaranty in this case was not a guaranty to the seller Hawkins of the solvency of the purchaser Segari & Co. to induce the extension of credit by Hawkins to Segari & Co.

It was a guaranty made by each New Orleans bank to the plaintiff, Bank of Plant City, of the respective sight drafts which were to be drawn by Hawkins on Segari & Co. It is manifest that these guaranties were made to the Bank of Plant City to induce it to cash these drafts.

It was an independent guaranty to a third party made of two certain sight drafts to be drawn by Hawkins on Segari & Co. with a view to have the Bank of Plant City, on the strength thereof, cash such drafts and thus furnish to Hawkins the money which Segari & Co. were to wire him.

The consideration of the guaranty was not the sale of the tomatoes, but the payment by the Bank of Plant City of the money on the drafts.

That the guaranty made by the telegram of May 22d was one to the plaintiff bank is very apparent from the letter confirming it. This letter is addressed to the Bank of Plant City and says:

"We trust it has been convenient for you to accept our guaranty and that you will allow this draft to come to us direct for collection, we guaranteeing prompt payment."

It is the Bank of Plant City whose acceptance of the guaranty is asked.

The language clearly indicates that the New Orleans bank is guaranteeing payment to the Bank of Plant City of this draft which the latter bank has cashed on the faith of its guaranty.

[2] The authorities on this subject are quite clear:

"Moreover, the guarantor may be liable, despite the invalidity of the principal obligation, if the guaranty is a separate and independent transaction binding the guarantor independently of the original contract. The doctrine that the guarantor is liable on an independent guaranty of an invalid obligation applies with added reason to the guaranty of a negotiable obligation for the purpose of procuring its acceptance by a third person. In such a case the liability of the guarantor is not affected by the invalidity of the principal obligation." 12 R. C. L. 1073.

The following rule has been repeatedly followed:

"A guaranty of payment to one not a party to the instrument or claim guaranteed, made upon a valuable consideration, or made under such circumstances as would work a damage to the party guaranteed, is in effect a representation that the instrument or claim is perfectly legal and valid, as well as an undertaking to pay it in case of default of the person primarily liable, and concludes the guarantor from questioning the liability of the parties on such instrument or claim." Purdy v. Peters, 35 Barb. (N. Y.) 239, 248.

See Nelson v. Hinchman, 118 Fed. 435, 55 C. C. A. 251; McKinnon v. Boardman, 170 Fed. 920, 96 C. C. A. 136; American Nat. Bank v. Pillman, 176 Mo. App. 430, 158 S. W. 433; El Paso Bank & Trust Co. v. First State Bank (Tex. Civ. App.) 202 S. W. 522; Holm v. Jamieson, 173 Ill. 295, 50 N. E. 702, 45 L. R. A. 846.

The telegram in regard to the second draft is a direct promise by the

Canal Bank & Trust Company to the Bank of Plant City to pay such draft. It reads:

"We will honor sight draft of W. J. Hawkins, bill of lading attached covering car tomatoes on S. Segari & Company."

This telegram is in effect a special letter of credit addressed by the New Orleans bank to the Bank of Plant City.

"If the letter is addressed to a particular person, who advances goods or money on it in accordance with its tenor, the letter becomes an available promise in favor of the person making the advance. When acted on, and the advances made in accordance with its terms, a contract is created between the writer of the letter and the party who has acted upon it, upon which an action can be maintained." Amer. Steel Co. v. Irving Nat. Bank (C. C. A.) 266 Fed. 41, 43.

See Nisbett et al. v. Galbraith et al., 3 La. Ann. 690.

The facts of this case do not present the point on which Merchants' National Bank of Ocala v. Citizens' State Bank, 93 Iowa, 650, 61 N. W. 1065, 57 Am. St. Rep. 284, was ruled. In that case the language was: "Will guarantee Butts draft for car oranges from B. Arentz." Arentz had sold a car of oranges to Butts. The court, commenting on the form of undertaking, construed it as follows:

"It was not to be a guaranty of Arentz's draft, nor of a draft drawn on Butts, and not accepted by him, but of one on which he was liable, drawn for a car of oranges."

The implication is that, had the guaranty been of Arentz sight draft on Butts, the guaranty would have attached regardless of Butts' proper rejection subsequently of the oranges.

In this case the promise was to guarantee the payment of these drafts drawn by Hawkins on S. Segari & Co. The decision, therefore, is not in point.

[3] That the Bank of Plant City was not expected to inspect the car of tomatoes shipped is shown by the telegrams and by the nature of the transaction. The guaranty of May 22d states that the car had been shipped the day before. The statement therein "fancy three dollars crate, choice two seventy-five," was clearly inserted simply to indicate the amount for which the draft should be made and could not have been intended to put upon the Bank of Plant City any burden to ascertain the contents of a car already shipped. The telegram of May 23d was even plainer. It was a direct promise to honor a sight draft of W. J. Hawkins on S. Segari & Co. with bill of lading attached covering one car of tomatoes. There is no question in this case but that these two bills covered the two cars, the numbers of which had been previously wired to S. Segari & Co., and were the cars to which the telegrams to the bank related. American Nat. Bank v. Pillman, 176 Mo. App. 430, 158 S. W. 433.

So far as the proof in this case shows, the plaintiff has paid its money for these drafts on the faith of these guaranties and has not been repaid.

[4] That no formal acceptance of the guaranties was needed was conceded by the defendant on the argument, and we think properly so

under the facts of the case. F. W. Heitmann v. K. C. & S. Ry. Co., 136 La. 826, 67 South. 895; Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 South. 267, L. R. A. 1917D, 402; London, etc., Bank v. Parrott, 125 Cal. 472, 58 Pac. 164, 73 Am. St. Rep. 64.

The judgment of the District Court is reversed, and the case remanded for further proceedings in harmony with this opinion.

Reversed and remanded.