JUDSON *et al.* v. SMITH *et al.*, *Appellants*.

DIVISION ONE.

1. **Statutes :** CONSTRUCTION : SUMMARY REMEDY. Statutes prescribing summary remedies against common law and common right should be strictly construed.

2. ———: ———: ———: DELINQUENT COUNTY COLLECTOR : DISTRESS WARRANT : INJUNCTION. Where statutes providing for the collection of the revenue require monthly payments to be made by collectors and authorize the issuance of a distress warrant by the state auditor for failure to comply with that requirement, and also require such collectors to make yearly settlements and payments, and likewise empower the state auditor to issue distress warrants against delinquents and their sureties immediately after the delinquency shall occur, the state auditor cannot issue a distress warrant against a delinquent collector and his sureties eighteen months after the collector's term of office has expired, and where it has been so issued injunction will lie to restrain execution.

3. ———: ———: ———: ———: ———. Where the form of a distress warrant given by the statute in such cases is for the collection of the revenue for one year, the warrant cannot be issued for the collection for two years.

4. ———: ———: ———: ———: ———: TRESPASS. The issuance of a distress warrant, under any other circumstances than those authorized by statute, will make the officer issuing it a trespasser.

*Appeal from Dent Circuit Court.*—HON. C. C. BLAND, Judge.

AFFIRMED.

*John M. Wood*, Attorney General, and *E. A. Seay* for appellants.

While it was the duty of the auditor to immediately issue a distress warrant against Reddick and his sureties, upon ascertaining the amount he owed the state, still the failure of John Walker, the then auditor, to do his duty does not exonerate or discharge the sureties on Reddick's bond. We refer to the following decisions in support of this position : *Parks v. State*, 7 Mo., side p. 195 ; *Daviess Co. v. Sailer*, 63 Mo. 24 ; *State v. Atherton*, 40 Mo. 210 ; *Chew v. Englewood*, 86 Mo. 260 ; *Nolley v. Court*, 11 Mo., side p. 464 ; Murfree on Official Bonds, sec. 56 and note, and sec. 272, and note ; Brandt on Suretyship, sec. 474 ; *U. S. v. Kirkpatrick*, 9 Wheaton, 720. Although Judge HENRY in the case of *Carroll Co. v.*

*Roberts*, 68 Mo. 234, quotes the case of *People v. Jansen*, 7 Johns. Rep., with approval, it will be seen by reference to *Sparks v. State*, 7 Mo., side p. 195 ; *State v. Atherton*, 40 Mo. 210 ; *U. S. v. Kirkpatrick*, 9 Wheaton, 720, that the rule laid down in the *Jansen case* was over-ruled and overturned long prior to the date at which the opinion in 68 Mo. was rendered.

*L. B. Woodside* for respondents.

The distress warrant was issued without any legal authority, and is, therefore, void. ( 1 ) The process being extraordinary, the steps leading to it must all have been taken, and the authority to issue it will not be extended beyond the statutory permission.   The statute must be strictly pursued, and the ordinary legal intendments do not apply in aid· of such proceedings, and all the statutory conditions must exist.   Cooley on Taxation [ 2 Ed.] p. 719.   ( 2 )   Sections 7566, 7567 and 7568, General Statutes, 1879, by the pretended authority of which the distress warrant was issued, are not· applicable when the term of office of the defaulting officer has expired.   *Ray Co. v. Barr*, 57· Mo. 290 ; *Wimpey v. Evans*, 84 Mo. 148 ; *Cole Co. v. Dallmeyer*, 101 Mo. 57. ( 3 )   If the'words " immediately," in section 7568, and "within thirty days," in section 6781, do not mean anything, we are without any statutory regulation as to time in which a distress warrant may issue, and its issuing would be governed by the rules of the common law. At common law, an execution must issue within a year and a day after judgment.   2 Blackstone, Com. [Cooley] book 3, p. 421, side p. 419.   And a distress must be made before the expiration of the contract upon which it is based.   2 Blackstone's Com. [ Cooley ] book 3, 11, side p. 9 ; 2 Bouvier's Inst., secs. 2450–2470.   ('4 )   This distress warrant would not be valid even if the term of office of the collector had not expired when it was issued. *First.*   To authorize a distress warrant every step leading

to it must have been taken and the statute strictly pursued. Cooley on Taxation [ 2 Ed. ] p. 719. *Second.* And the warrant must show on its face all the facts which are necessary to authorize it, and show a strict compliance with all the statutory provisions, and be issued in exact accordance with the statute. *Weimer v. Bunbury*, 30 Mich. 219. ( 5 ) It was claimed by appellants that the warrant was intended to cover the collections for both years, 1885 and 1886, and if this be correct it was not in compliance with the statutes as the settlement upon each year's tax book was a separate and distinct matter. R. S. 1879, sec. 6772. ( 6 ) Injunction is the proper and only remedy in this case. *Fleming v. Walker*, April term, 1890; *Railroad v. Apperson*, 97 Mo. 300 ; *Bornschein v. Fink*, 13 Mo. App. 120 ; *Towne v. Bowers*, 81 Mo. 491 ; *Valle v. Zeigler*, 84 Mo. 214.

SHERWOOD, P. J.—At the November election, 1884, John R. Reddick was elected collector of the revenue of Dent county, Missouri, and gave bond as such collector, and with the plaintiffs as sureties on said bond. His term of office expired March 7, 1887, at which time he was succeeded in office by one J. C. Welch, and he turned over to said Welch all the books of said office and never made any collections after said date. On the tenth of September, 1888, eighteen months after the expiration of Reddick's term of office, John Walker, state auditor, issued a distress warrant against said Reddick and the plaintiffs as his sureties, for the sum of $3,132.21, together with a penalty of two and one-half per cent. per month on said sum from the seventh day of March, 1887, amounting at the date of the warrant to the sum of $1,500.

The warrant was as follows :

"STATE OF MISSOURI—ss.

" *The State of Missouri to the sheriff of the County of Dent, Greeting :*

" Whereas John R. Reddick, the collector of the revenue of the county of Dent, aforesaid, for the years

of our Lord eighteen hundred and eighty-five and six, hath failed and neglected to pay into the state treasury the full amount with which he stands charged on the books of the state auditor of the state of Missouri, and which he ought to have paid into the state treasury, aforesaid, on or before the seventh day of March, in the year of our Lord eighteen hundred and eighty-seven; and whereas the auditor of the state of Missouri has ascertained the balance due the state of Missouri by said John R. Reddick to be the sum of three thousand and one hundred and thirty-two dollars and twenty-one cents, and the said auditor has, according to law, charged the said John R. Reddick, as aforesaid, with the further sum of two and a half per centum a month on said ascertained balance, as aforesaid, to be computed on said balance from the said seventh day of March, eighteen hundred and eighty-seven until the same shall be paid or collected.

"These are, therefore, to command you, in accordance with the provisions of this article, to levy and collect the sum of three thousand, one hundred and thirty-two dollars and twenty-one cents, the balance as aforesaid, ascertained to be due, and the said two and a half per centum a month from the seventh day of March, eighteen hundred and eighty-seven, aforesaid, of the goods and chattels and real estate of the said John R. Reddick and for want of sufficient goods and chattels and real estate to satisfy the aforesaid balance, together with the said per centum thereon, and the fees to the officer collecting the same, you are hereby commanded to levy the same upon the goods and chattels and real estate of James A. Headrick, John E. Organ, L. Judson, J. N. McMurtrey, G. S. Dreckworth, A. H. Clark and H. B. Clark, the securities of the said John R. Reddick.

"You are, also, commanded, that after you have made such levy and collection, you pay the same into the state treasury within thirty days after its transaction,

unless the first Monday of March next following the date of this warrant shall intervene, and, in that event, then on or before that day, and return this warrant to the office of the state auditor and certify thereon how you have executed the same.

"In testimony whereof, I, John Walker, state auditor of the state of Missouri, have hereunto set my hand and affixed the seal of the auditor's office, in the city of Jefferson, this tenth day of September in the year of our Lord eighteen hundred and eighty-eight.

                         "JOHN WALKER,
                                    "State Auditor.
"Received December 1, 1888.
                         "J. L. SMITH,
              "Sheriff of Dent County, Missouri."

This warrant was placed in the hands of the sheriff of Dent county on the eleventh day of September, 1888, but nothing was done with it until the nineteenth day of February, 1889, when the real estate of these plaintiffs described in the petition, and of the value of $6,000, was levied on by the sheriff and was advertised for sale at the April term of the circuit court of Dent county, Missouri.

On the fourth day of April, 1889, plaintiffs presented their petition to the circuit court praying for an injunction against the said sheriff enjoining him from enforcing said warrant against them and selling said real estate thereunder. A temporary injunction was granted, and the cause was continued until the October term, 1889, when, upon trial, the injunction was made perpetual and the sheriff forever restrained from selling the real estate of plaintiffs levied upon under said warrant.

The petition stated substantially the following facts: That Reddick was elected collector of the revenue of Dent county, Missouri, at the November election, 1884; that his term of office expired on the seventh day of March, 1887, at which time he was succeeded in office by J. C. Welch, to whom, at said last-mentioned

day, he delivered all the books and papers pertaining to said office, and since which time he has not, in any way, discharged any of the duties of said office ; that the tax books for the year 1886 were put into his hands for collection and he made settlement thereon with the county court of Dent county on May 4, 1887, from which it appeared that he collected the sum of $5,824 of state taxes ; that nine-tenths of the taxes for said year were collected by said Reddick, before the first day of January, 1887, and one-tenth thereof between the first day of January, 1887, and the first day of March, 1887, after which last-mentioned time he did not collect any money whatever ; that no distress warrant had ever been issued by the state auditor to enforce the payment of the money collected by the said collector and no other steps taken to collect the same until the tenth day of September, 1888.

The petition then recites the issue of the distress warrant on September 10, 1888, by the state auditor against the said collector and these plaintiffs for the sum aforesaid, its delivery to the sheriff, J. L. Smith, and that, under said warrant, the said sheriff had, on the nineteenth day of February, 1889, levied on the real estate of plaintiffs ( describing it and giving its value ), had advertised it for sale on April 4, 1889, at April term of the circuit court, and would sell the same to satisfy the demands of said distress warrant, unless restrained therefrom by the court; that a sale of said lands so levied on by the sheriff under said warrant would cast a cloud on the title of plaintiffs therein and injure plaintiffs, and would be a legal wrong for which no adequate remedy could be had in damages ; that the said distress warrant should not be enforced against these plaintiffs for various reasons therein stated, among which were the following :  That no due process of law had been had against them in fixing the amount of Reddick's indebtedness to the state or as preliminary to the issuing of said distress warrant, and no opportunity

had been given then by notice, summons or otherwise to answer to or defend against said claim; that the settlement made by said collector with the county court was erroneous, and he had not collected the amount charged to him therein.

No proceedings as required by law were ever taken to enforce the amount due from said collector by distress warrant in due and proper time. No notice of any kind was given to these plaintiffs, of any indebtedness to the state until the tenth day of September, 1888, and they had no notice of any deficit upon such collections until said last-mentioned time.

The county court of Dent county, Missouri, unlawfully and improperly extended the time of the final settlement of the said collector from the first Monday in March, until the first Monday in May, 1887.

The state auditor acted without authority of law in issuing the distress warrant at the time and in the manner issued, as well as for the amount of the same.

That a large portion, to-wit, the sum of $5,000 collected by said collector upon the tax of 1886, had been paid to the state.

It was further stated in the petition that plaintiffs were informed that a portion of the amount embraced in the warrant was claimed for taxes collected during the year 1885; and alleging substantially the same reasons why that should not be enforced against them, and closing by the statement that the state auditor acted without authority of law in issuing said warrant at the time it was issued, and for the amount thereof, and praying that the said sheriff be enjoined and restrained from selling said real estate, and for other relief, etc.

The court on presentation of the petition granted a temporary injunction, and continued the cause until the October term, 1889, when the cause was tried. The defendants in their answer justified under, and relied upon, the distress warrant; otherwise their answer was in effect a general denial.

The evidence showed that the warrant was issued for the amount and at the time stated in the petition and for a penalty of two and one-half per cent. per month on the amount from March 7, 1887; that it was delivered to the former sheriff of said county on the fifteenth day of September, 1888, but no levy was made by him, and he delivered the same to J. L. Smith, the present sheriff and the defendant, on the first day of December, 1888. And on the nineteenth day of February, 1889, said Smith levied on the lands of plaintiff described in the petition, under said warrant, and had advertised the same for sale; that Reddick's term of office expired on the first Monday in March, 1888, when he was succeeded in office by J. C. Welch, and that there were terms of court held in said county as provided by law; that no distress warrant was ever issued against said collector prior to this one, and the plaintiffs were never informed of any delinquency on the part of the collector until the warrant was issued, which was more than a year after he had gone out of office.

It was further shown that Reddick made no collections whatever after he went out of office on the first Monday in March, 1887, and that two-thirds of all taxes collected by him for each year were collected prior to the last of December of such year.

The record of the county court was introduced, showing a term of court held on the first Monday in March of each year, 1886 and 1887, at each of which terms the settlement of the collector was continued until the May term of court; and that the settlement for 1885 taxes was made at the May term, 1886, and for 1886 taxes at the May term, 1887. It was also shown that the collector had paid on his collections, for 1886, $5,000, and for 1885, $4,500.

The court made the injunction perpetual, from which judgment the defendants have appealed to this court.

In order to the proper understanding of the matters involved in this litigation, it becomes appropriate to quote certain statutory provisions on which the defendants herein must rely for the validity of their action in the premises :

These statutory provisions are as follows : " Sec. 6780. Every county collector and *ex officio* county collector, except in the city of St Louis, shall, on or before the fifth day of each month, file with the county clerk a detailed statement, verified by affidavit, of all state, county, school, road and municipal taxes, and of all licenses by him collected during the preceding month, and shall, on or before the fifteenth day of the month, pay the same, less his commissions, into the state and county treasuries, respectively. It shall be the duty of the county clerk, and he is hereby required, to forward immediately a certified copy of such detailed statement to the state auditor, who shall keep an account of the state taxes with the collector.

" Sec. 6781. If any county collector, or *ex officio* county collector, shall fail or refuse to pay the taxes and licenses into the state and county treasuries, as provided in the preceding section, he shall forfeit his commissions thereon, and in addition thereto shall pay a penalty of ten per cent. on the amount thereof, and it shall be the duty of the state auditor to issue a distress warrant for such state taxes and penalties within thirty days, as provided by law. It shall be the duty of the prosecuting attorney to proceed, within thirty days, to collect such county, school, road and municipal taxes, by suit on the official bond of such defaulting collector.

"Sec. 6782. Every county collector shall, on or before the fifteenth day of each month, pay to the state treasurer all state taxes and licenses received by him prior to the first day of the month, as provided in section 6780, and, upon the receipt of such money, the treasurer shall apply the same to the state interest fund to the extent of one-half of such fund charged on the

current tax books to such collector, and the excess to the revenue fund, and shall execute duplicate receipts therefor, one of which he shall deposit with the state auditor, and the other he shall forward or deliver to the collector, and the auditor shall credit such collector with the sums so paid ; and any collector who shall fail to forward by express, bank exchange, or pay the same as herein required, within the time prescribed, shall forfeit to the state the sum of $200 for each such failure, to be recovered of him or his securities on his official bond ; and the state auditor shall direct the prosecution of suit therefor immediately upon such failure, in addition to proceeding by distress warrant for the amount of taxes due, as provided in section 6781 ; and every collector shall, within thirty days after the final settlement of his account for the revenue and licenses, as provided in section 6772, settle his account with the state auditor, and pay into the state treasury the balance of all revenues and licenses then due the state, after deducting his commissions, and the treasurer shall give duplicate receipts for the amount paid, one of which shall be deposited with the state auditor. The treasurer shall allow to the collector his proper charges for expressage and exchange in remitting the revenue and licenses to him. Upon the settlement of the collector with the auditor, the treasurer shall apportion the balance of the revenue, paid to him by the collector, between the state revenue and state interest fund, so as to make both funds as nearly equal as may be."

"Sec. 7566. All officers and others bound by law to pay money directly into the state treasury shall exhibit their accounts and vouchers to the state auditor, on or before the first Monday in January in each year, to be audited, adjusted and settled, except the collectors of the revenue, who shall, immediately after their settlement with the county court on the first Monday in March in each year, exhibit their accounts and vouchers to the state auditor to be audited, adjusted and settled ;

and the state auditor shall proceed, without unnecessary delay, to audit, adjust and settle the same, and report to the treasurer the balance found due.

"Sec. 7567.    If any of the persons mentioned in the preceding section shall fail to pay the amounts so found due into the treasury within thirty days after the settlement above required, the delinquent shall forfeit to the state the amount of the commission allowed him by law, and also two and one-half per centum a month on the amount wrongfully withheld, to be computed from the time the same ought to have been paid until actual payment, and the auditor shall charge such delinquent accordingly.

"Sec. 7568.    The auditor shall, immediately after such delinquency shall occur, issue a warrant of distress against such delinquent and his securities, directed to the sheriff of the proper county, or, if he shall be disqualified to act, then to the sheriff of some adjoining county, who is authorized and required to execute the same, and who, together with his securities, shall be liable on his official bond in the same manner, and to the same extent as if the writ were to be executed in his own county, stating therein the amount due and the penalties and forfeitures thereon accrued.

"Sec. 7569.    The distress warrant may be in the following form :

"STATE OF MISSOURI—ss.

"The state of Missouri to the —— of the county of ——, greeting:    Whereas ——, the collector of the revenue of the county of —— aforesaid, for the year of our Lord eighteen hundred and ——, hath failed and neglected to pay into the state treasury the full amount with which he stands charged on the books of the state auditor of the state of Missouri, and which he ought to have paid into the state treasury aforesaid, on or before the ——, in the year of our Lord eighteen hundred and ——; and whereas the auditor of the state of Missouri has ascertained the balance due the state of Missouri by

said —— to be the sum of —— dollars and —— cents, and the said auditor has, according to law, charged the said ——, as aforesaid, with the further sum of two and a half per centum a month on said ascertained balance as aforesaid, to be computed on said balance from the said ——, eighteen hundred and ——, until the same shall be paid or collected. These are, therefore, to command you, in accordance with the provisions of this article, to levy and collect the sum of —— dollars and —— cents, the balance, as aforesaid, ascertained to be due, and the said two and a half per centum a month from the ——, eighteen hundred and ——, aforesaid, of the goods and chattels and real estate of the said ——, and for want of sufficient goods and chattels and real estate to satisfy the aforesaid balance, together with the said per centum thereon and the fees to the officer collecting the same, you are commanded to levy the same upon the goods and chattels and real estate of ——, the securities of the said ——; you are, also, commanded that, after you have made such levy and collection, you pay the same into the state treasury within thirty days after its collection, unless the first Monday of March next following the date of this warrant shall intervene, and, in that event, then on or before that day, and return this warrant to the office of the state auditor, and certify thereon how you have executed the same. In testimony whereof, I, ——, state auditor of the state of Missouri, have hereunto set my hand and affixed the seal of the auditor's office, in the City of Jefferson, this —— day of ——, in the year of our Lord eighteen hundred and ——.

"—— ——, State Auditor."

There is no canon of construction more rigidly and universally followed than that which requires statutes prescribing summary remedies, remedies in derogation of common law and common rights, to be strictly or literally construed. Touching this point an eminent law-writer says: "A summary distress warrant against

the collector and his sureties can only be awarded where the bond is in accordance with the statute, and where all the statutory conditions exist. The process being extraordinary and in derogation of the common law, the steps leading to it must all have been taken ; and, if it is issued under any other circumstances than those under which the statute gives it, the officer issuing it will be a trespasser. The liability is *strictissimi juris*, and cannot be extended a single step beyond the statutory permission. The same remark may be made of the case of application for judgment on motion. The statute must be strictly pursued, as the ordinary legal intendments do not apply in aid of the proceedings in such a case. But, where the statute has been strictly pursued, the summary remedies have been sustained by the courts without hesitation." Cooley on Taxation [2 Ed.] 719, and cases cited. To the same effect, see 2 Desty on Taxation, 762, 763, 1034, 1043.

It only requires a very cursory examination of the warrant issued herein, and the statutory provisions already set forth, to see, at once, that those provisions have not been complied with, either strictly or substantially.

The governing idea of the statute under discussion is the enforcement of prompt payments of the public revenues. Instead, however, of this being done, there was no exaction of monthly payments as required by the statute, nor was the warrant in question issued by the auditor until some eighteen months after Reddick, the collector, went out of office. More than that, the warrant itself does not comply with, nor conform to, the form given by section 7569 ; because that section is framed for the collection of the revenue but for a *single* year, and not for former years, as is the case with the present warrant.

Section 7566 requires the collector, immediately after his settlement with the county court on the first Monday in March in *each year*, to exhibit his accounts

and vouchers to the state auditor to be audited, adjusted dna settled ; and if the collector fail to pay the amount thus ascertained to be due, section 7568 requires the auditor, "*immediately* after such delinquency shall occur," to issue a warrant of distress, etc.   But, as already seen, if the warrant be "issued under any other circumstances than those under which the statute gives it, the officer issuing it will be a trespasser."

As showing the strictness with which this court has heretofore regarded similar proceedings it was ruled in *Ray Co. v. Barr*, 57 Mo. 290, that a former clerk of the circuit court could not be proceeded against for the collection of certain fines, etc., which he had retained, in the summary manner provided for in section 5379, Revised Statutes, 1879, after he had gone out of office. So, also, in *Brown v. Weatherby*, 71 Mo. 152, the provisions of section 67, page 81, 1 Wagner's Statutes, it was held that the sureties of a public administrator who was delinquent in his accounts could not be proceeded against in the summary way provided for in that section unless their delinquent principal were proceeded against at the same time.

A similar ruling was made in *Governor v. Powell*, 23 Ala. 579, where it was held that though the statute authorized a summary judgment against the collector and his sureties, yet that, if the collector was dead, the summary remedy was gone.

Applying the rigid principles announced by the foregoing authorities there can be but one opinion as to the patent invalidity of the distress warrant issued in the present instance.

In cases of this sort, cases where the officer who is clothed with such extraordinary authority proceeds in a manner not authorized by the statute which apparently purports to give such powers, the arm of a court of equity is not too short to stay his usurping hand and to arrest and to thwart his assumption of power unconferred.   It is true, courts of equity are averse to enjoining

public officers, especially so where it concerns matters pertaining to the public revenues; but, if public functionaries when acting ministerially exceed the limits of their lawfully constituted authority and jurisdiction, they are not so high nor powerful as to be out of the reach or beyond the control of a court of equity.

This principle has met with frequent exemplification. Thus in *Frewin v. Lewis*, 4 Mylne & Craig, 249, Lord COTTENHAM, said: "The question of jurisdiction was raised, and it was argued by those who supported the demurrers that this court had no jurisdiction. Now, I apprehend that the limits within which this court interferes with the acts of a body of public functionaries, constituted like the "Poor Law" commissioners, are perfectly clear and unambiguous. So long as those functionaries strictly confine themselves within the exercise of those duties which are confided to them by the law, this court will not interfere. The court will not interfere to see whether any alteration or regulation which they may direct is good or bad; but, if they are departing from that power which the law has vested in them, if they are assuming to themselves a power over property which the law does not give them, this court no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority." This case is cited with approval by Judge STORY. 2 Eq. Juris. [ 13 Ed. ] 259.

High says: "Upon the other hand, if the acts which it is sought to restrain are of a strictly ministerial, as distinguished from an executive or political nature, the fact that they have been committed to executive officers, such as the governor of a state, or a state auditor, will not prevent relief by injunction in a proper case." High on Injunc., sec. 1326.

Pomeroy says: "An injunction will not be granted, in general, to restrain persons from acting as

Bergeman v. The Indianapolis & St. L. Ry. Co.

public officers ; but the illegal, unlawful or improper acts of public officers may be restrained when they would produce irreparable injury, or create a cloud upon title, or when such remedy is necessary to prevent a multiplicity of suits." 3 Pomeroy's Eq. Juris., sec. 1345 ; *Railroad v. Apperson,* 97 Mo. 300.

These authorities abundantly sustain the action of the circuit court in perpetually enjoining the defendants from further proceeding under and by virtue of the distress warrant, and we affirm the judgment. All concur.