STATE of Missouri ex rel. TURCO DEVELOPMENT COMPANY and Security Mortgage Co., Inc., Relators,

v.

Hon. Herbert LASKY, Judge of the Circuit Court of the County of St. Louis, Missouri, Division 4, and Hon. Robert G. J. Hoester, Presiding Judge of the Circuit Court of the County of St. Louis, Missouri, Division 8, Respondents.

No. 40732.

Missouri Court of Appeals, Eastern District, Division One.

May 9, 1979.

Steinberg & Crotzer, Darold E. Crotzer, Jr., Clayton, for relators.

John D. Schneider of Boas, Schneider & Walsh, St. Louis, for respondents.

GUNN, Judge.

Relators Turco Development Company (Turco) and Security Mortgage Company, Inc. (Security) seek to make absolute a writ of prohibition preliminarily granted against respondents St. Louis County Circuit Court judges. The writ proceeding was instituted after a temporary restraining order was issued and upheld by respondents against Turco and Security at the behest of Allied Builders Corporation (Allied). Relators Turco and Security maintain that the issuance of the temporary restraining order was in excess of the respondent's jurisdiction as Allied had adequate remedy at law and had failed to allege facts in its petition for temporary restraining order which would entitle it to equitable relief. We make the writ of prohibition absolute.

The pertinent facts commence on December 3, 1976 when Allied and Turco entered into a contract for the construction by Allied of two office-warehouse buildings. The contract provided for construction in three phases, with phase I to be completed within eight months from the time Allied was notified to proceed. If the completion time on phase I extended beyond ten months, the contract provided for liquidated damages of $25,000 payable to Turco. For failure, refusal or neglect to perform phases II and III, Allied agreed that it would be liable to Turco in the amount of $50,000 as additional liquidated damages. The contract also stipulated that ". . . Allied would deposit with Turco an unconditional and irrevocable bank letter of credit satisfactory to Turco that Turco may draw upon in the event Allied fails to perform as outlined herein." Pursuant to the terms of contract Tower Grove Bank in St. Louis issued the irrevocable letter of credit on December 15, 1976. As a condition precedent to drawing upon the letter, proper endorsement was to be accompanied by a written certificate, signed on oath as to the truth of the facts it recited to the effect that Allied had defaulted on the contract. The default was to be specified. On May 19, 1978 Turco drew on the letter of credit the sum of $50,000 and stated in its certificate under oath that:

> "Allied Builders Corporation has defaulted under its contract with Turco Development Company dated December 3, 1976. The default includes, but is not limited to, failure to complete the building and improvements which were (are) the subject matter of the contract in accordance with plans, specifications and times provided therein and in accordance therewith."

On June 27, 1978, Allied applied for a temporary Restraining Order to require Turco and Security [1] to return the $50,000. It was alleged that Turco deposited the money into an escrow account held by Security with the First National Bank of St. Louis. Allied contended that it had not breached the construction contract and that its property ($50,000 worth of credit) was improperly obtained by Turco and wrongfully detained by its agent Security. Respondent Judge Hoester granted the order which restrained both Turco and Security from expending or otherwise diverting any portion of the money. The order further mandated the return to Allied of the $50,000 until a hearing was held on the injunction application. On July

---

1. Allied charged that Security Mortgage was either a wholly owned subsidiary of Turco or controlled by it through interlocking directors and officers.

13, 1978, respondent Judge Lasky overruled Turco's motion to dismiss the injunctive count and refused to quash the temporary restraining order. On July 26, 1978, Turco and Security filed an amended petition for a writ of prohibition to preclude enforcement of the restraining order. The writ was granted preliminarily on August 7, 1978.

The central issue in this case is whether an injunction which mandates the return of money drawn against an irrevocable letter of credit is proper when proof of the petitioner's (Allied's) entitlement to relief depends entirely upon an interpretation of the underlying contract. To permit enforcement of such an injunction would, in our opinion, defeat the usefulness of a letter of credit as a commercial instrument. A letter of credit is "an engagement by a bank or other person made at the request of a customer . . . that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." § 400.5–103(1)(a), RSMo 1969. In the instant situation, Turco sought a guarantee from Tower Grove Bank as an institution with an acceptable credit standing that Allied would have a resource to pay liquidated damages should it fail to comply with the underlying construction contract. In essence, the letter of credit provided a substitution for a performance bond. It should be emphasized, however, that the letter of credit contract is completely independent of the construction contract between Turco and Allied. § 400.5–109(1)(a), RSMo 1969. *See also,* Comment 1, § 400.5–114 (V.A.M.S.1969). "The function of an issuer of a letter of credit is only to finance the [contract] and not to otherwise participate therein. It is this isolation from the underlying . . . contract which enables letters of credit to be economically written." Annot., 35 A.L.R.3d 1404, 1409, n.12 (1971). Consequently, Tower Grove Bank's obligation to comply with the conditions specified in the credit contract extended only to an examination of the written certificate to determine that it stated with some specificity that Allied had defaulted. As stated in Comment 2, § 400.-5–109 (V.A.M.S.1969), the purpose of the examination is to determine whether the documents appear to be regular on their face. Tower Grove Bank apparently complied with that obligation. At that point, Tower Grove Bank was obligated to honor Turco's demand under the letter of credit regardless of whether Allied actually breached the underlying contract. *See,* § 400.5–114(1), RSMo 1969. If the demanding party holds the letter of credit under circumstances which make it a holder in due course, then the issuer must honor the draft despite irregularities specifically referred to in § 400.5–114(2)(a), RSMo 1969, including forged and fraudulent instruments. Section 400.5–114(2)(b), provides authority for injunctive relief from honoring a defective letter of credit:

> (b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction *may enjoin* such honor. (emphasis added)

Though there has been little case law in this area, other jurisdictions have enjoined payment on a letter of credit where fraud or forgery could be alleged, e. g.: *Dynamics Corporation of America v. Citizens National Bank,* 356 F.Supp. 991 (Ga.1973); *Shaffer v. Brooklyn Park Garden Apartments,* 250 N.W.2d 172 (Minn.1977). But there has been consistent refusal to enjoin payment where there was no allegation of forgery or fraud, e. g.: *Edgewater Construction Co., Inc. v. Percy Wilson Mortgage and Finance Corp.,* 44 Ill.App.3d 220, 2 Ill.Dec. 864, 357 N.E.2d 1307 (1976);[2] *Intraworld Industries,*

---

**2.** The facts and circumstances of *Edgewater Construction Co., Inc. v. Percy Wilson Mortgage & Finance Corp.,* supra, leading to the holding that injunctive relief would not lie, are remarkably similar to those in this case. *Edgewater,* provides strong support for the result we reach here.

*Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 319 (1975). In this case, of course, no such allegations were made. While Article 5 of the Uniform Commercial Code does not specifically treat the relationship between a customer and beneficiary who are parties to an underlying contract, we believe policy reasons mandate that § 400.5–114(2)(b) governs the issuance of an injunction against such a beneficiary as well as against the issuing bank. The letter of credit about which the dispute arose here was expressly designated as an instrument which could be sold, assigned or transferred. Furthermore, a beneficiary is always capable of issuing drafts to third parties against the letter which the beneficiary holds. As stated in *Frey & Son, Inc. v. Sherburne Co.*, 193 App.Div. 849, 184 N.Y.S. 661 (1920), where the court refused to issue temporary injunction against the beneficiary and the bank:

> Interests of innocent parties who may hold drafts upon the letter of credit should not be made to suffer by reason of rights that may exist between the parties to the contract of sale in reference to which the letter of credit was issued. It would be a calamity to the business world . . . if for every breach of contract between buyer and seller a party may come into a court of equity and enjoin payment on drafts drawn upon a letter of credit issued by a bank. l. c. 664.

(See also the concurring opinion of Judge Jiganti in *Edgewater Construction Corp., Inc. v. Percy Wilson Mortgage and Finance Corporation*, supra.) While we know in fact that the $50,000 was held in escrow during the five weeks between Turco's demand and the issuance of the temporary restraining order, it is clear that Turco could have used the credit as it chose and had unlimited discretion as to the manner of exhaustion. See § 400.5–110, RSMo 1969. Ground for injunctive relief against the letter of credit beneficiary as provided by § 400.5–114(2)(b) has not been alleged nor does any

appear to exist. Imposition of such relief under the circumstances would improperly trammel the free flow of commerce intended by the Uniform Commercial Code relating to letters of credit.

Even an analysis of the temporary restraining order under traditional rules governing injunctive relief leads us to the conclusion that the order should not have been granted. Allied alleged that it had no adequate remedy at law but legitimately could only complain that the loss of $50,000 credit was a threat to its ability to do business; that it would suffer irreparable harm as the result of the loss. These allegations are not sufficient to justify the relief which Allied sought. Of course, Turco now has the use of the $50,000, but such was the risk taken when Allied agreed to a liquidated damage clause. There is no evidence or suggestion that Allied would not be able to collect on a money judgment against Turco should it be judicially determined that Allied did not default. Even if Allied pleaded the contention, it would not be sufficient to support injunctive relief. *Morris v. Maheras*, 197 S.W.2d 998 (Mo.App.1946). The fact that a proceeding under a theory of contractual breach may be slower than an order in equity does not make this action for damages any less adequate. Allied has an adequate remedy at law and has been unable to establish irreparable injury or any other ground for injunctive relief. Consequently, the trial court had no jurisdiction to grant the temporary restraining order. *State ex rel. General Dynamics Corp. v. Luten*, 566 S.W.2d 452 (Mo. banc 1978); *State ex rel. Phillips v. Yeaman*, 451 S.W.2d 115 (Mo. banc 1970); *State ex rel. National Bank in North Kansas City v. Yeaman*, 479 S.W.2d 164 (Mo.App.1972).

We order the provisional rule be made absolute.

SNYDER, P. J., and SMITH, J., concur.