**EASTON TIRE COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**FARMERS & MERCHANTS BANK,**
**Defendant-Respondent.**

No. 45018.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 16, 1982.

Michael H. Wetmore, St. Louis, for plaintiff-appellant.

A. M. Spradling, III, Morley Swingle, Cape Girardeau, for defendant-respondent.

SMITH, Presiding Judge.

Plaintiff, Easton Tire Company, appeals from the trial court's judgment in favor of defendant, Farmers and Merchants Bank, on plaintiff's action to recover damages for wrongful dishonor of an irrevocable letter of credit. The matter was tried to the court. We affirm.

Prior to July 1978 Arrowhead Tire Company sought to purchase tires from plaintiff on a regular and substantial basis. Because of its belief of Arrowhead's undercapitalization, plaintiff agreed to make such sales on credit only if Arrowhead secured a letter of credit from a bank in favor of plaintiff. Defendant, Arrowhead's bank, issued the following letter dated July 13, 1978:

"Irrevocable Letter of Credit

Credit Letter No. One

Easton Tire Co.

2047 Hitzert Court

Fenton, Mo. 63026

Gentlemen:

We hereby open our irrevocable credit in your favor for the account of Arrowhead Tire Co., Inc., for a sum not exceeding a total of Twenty-five Thousand Dollars (25,000.00) available by your sight drafts on this bank.

This letter of credit represents our absolute and unconditional guarantee of payment for tires, tubes and rubber products sold and delivered by you to Arrowhead Tire Co., Inc., on your customary terms.

Your drafts shall be accompanied by a copy of your customary commercial invoice or monthly account statement and shall be marked: 'Drawn under Farmers and Merchants Bank Letter of Credit No. One.' Any drafts under this commitment must be drawn and negotiated on or before January 13, 1979.

> FARMERS & MERCHANTS BANK
> by /s/ W. L. Bowers
> Vice President"

Plaintiff's "customary terms" contemplated a 30–60–90 day payment schedule, whereby one-third of the money owed for goods bought through the 25th of the month became due on the 10th of the following month, the second third on the 10th of the second following month, and the final third on the 10th of the third following month. If the buyer failed to meet a scheduled payment all outstanding sums became due immediately.

Upon receipt of Credit Letter No. One, plaintiff began selling tires to Arrowhead. Arrowhead made its payments directly to Easton in timely fashion through December 10, 1978, and Easton did not utilize the letter of credit to obtain payment. Before the expiration date of Credit Letter No. One, Easton requested from the defendant a second letter of credit which the bank issued. It was identical to the first letter with the following exceptions.

(1) It was entitled Credit Letter No. Two;

(2) It had an effective date of January 13, 1979;

(3) It had a termination date of July 13, 1979;

(4) It reduced the line of credit to $20,-000. This last change was at the suggestion of Easton which had decided to extend its own open line of credit of $5,000. to Arrowhead because of Arrowhead's prompt payment history.

The second letter was received by Easton prior to January 10, 1979. On January 10, Arrowhead defaulted on its payment due that date thereby immediately accelerating the entire debt. Subsequently Arrowhead went into bankruptcy. On February 21, 1979, Easton presented the second letter of credit to the bank which refused to honor it. This lawsuit followed. There were no sales made to Arrowhead after January 10, 1979.

Plaintiff premises error upon the trial court's finding that because no obligations of Arrowhead to Easton came into existence after the effective date of Credit Letter No. Two there was no obligation under that letter for defendant to honor.

A letter of credit is "an engagement by a bank or other person made at the request of a customer . . . that the issuer will honor drafts or other demands for payment upon compliance with conditions specified in the credit." Sec. 400.5–103(1)(a), RSMo.1978. Typically a letter of credit implicates three separate contracts. One is between the issuer and its customer to issue the letter. The second is between the issuer and the party receiving the letter of credit—the beneficiary. The third is between the customer and the beneficiary usually involving the sale of goods. *East Girard Sav. Ass'n. v. Citizens Nat. Bank, etc.*, 593 F.2d 598 (5th Cir.1979). The letter of credit itself is in the nature of a contract between the issuer and the beneficiary and is independent of the underlying contract between the customer and the beneficiary. Sec. 400.5–114 comment 1, RSMo.1978. Traditionally the letter of credit provides for direct payment by the issuer to the beneficiary upon tender of a draft and doc-

uments of title evidencing delivery of goods to the buyer. No default in payment by the buyer is required to trigger the obligation of the issuer to honor the letter. In this traditional sense the letter of credit serves as a method of payment of executory contracts for the sale of goods and insures the seller that upon delivery he may effectuate payment directly from the bank issuing the letter. For a thorough discussion of letters of credit see White and Summers, Uniform Commercial Code § 18 (2d Ed. 1980).

Fairly recently an innovation in letters of credit has developed, generally referred to as the "guaranty" or "standby" letter of credit. *See* Verkuil, *Bank Solvency & Guaranty Letters of Credit,* 25 Stan.L.Rev. 716 (1973); Arnold and Bransilver, *The Standby Letter of Credit-The Controversy Continues,* 10 U.S.C. L.J. 272 (1978); *O'Grady v. First Union Nat. Bank,* 296 N.C. 212, 250 S.E.2d 587 (1978) [28]. The guaranty letter of credit is designed to ensure that one or more parties to a contract will perform their duties under it. It is utilized "to accomplish results previously obtained by such devices as performance bonds, escrow agreements, repurchase agreements, steamship guarantees, and leases on real and personal property." Verkuil, *supra,* l.c. 721. *See,* as an example, *State ex rel. Turco Development Co. v. Lasky,* 581 S.W.2d 935 (Mo.App.1979). Two main features of the guaranty letter of credit are that the issuer's obligation is triggered by default in performance of its customer and that the transaction arises in a context other than the sale of goods.

■ Plaintiff suggests that this case involves a guaranty letter of credit and that therefore the traditional view that letters of credit involve prospective obligations does not apply. We reject this contention for two reasons. First this was not on its face a guaranty letter of credit. Payment by the issuer was in no way conditioned upon a default by Arrowhead. Easton could have demanded payment under the letter from defendant upon tender of a draft and invoices whether or not Arrowhead was in default. The letter also arose in the context of a sale of goods, the traditional area of letters of credit. We have been cited to no case and have found none in which a "guaranty" letter of credit was utilized in a sale of goods context. Secondly, we have found no authority that a guaranty letter of credit, in the absence of an express provision therein, applies to debts incurred and already due prior to the effective date of the letter of credit. All the cases deal with prospective obligations, not those already matured.

We therefore examine the letter of credit within the framework of traditional letters of credit. In *Bank of Seneca v. First Nat. Bank,* 105 Mo.App. 722, 78 S.W. 1092 (1904), the court stated the rule of construction involving letters of credit as follows:

"The liability of a writer of a letter of credit is founded on the simple law of contracts, where the minds of the parties must meet in the common purpose." l.c. 1093.

■ The intention of the parties is to be tested by the terms of the document and the circumstances preceding and surrounding it. *Bridge v. Welda State Bank,* 222 Mo.App. 586, 292 S.W. 1079 (1927). As between the beneficiary of a letter of credit and the issuer, *if an ambiguity exists,* the words are taken as strongly against the issuer as a reasonable reading will justify. *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461 (2d Cir.1970) [5–10].

■ Traditional letters of credit are issued to provide payment for executory contracts. Verkuil, *supra,* l.c. 723. Nothing in the second letter of credit here reflects any different intention as to matured debts. On the effective date of the second letter Arrowhead's indebtedness to Easton was fully matured. Nor can we view the second letter as an extension of the first letter. It speaks in terms of a new or second obligation, commencing on the date of expiration of the prior obligation, having a newly established termination date and having a different monetary limit. Had the second letter been intended only as an extension or an extension with an amendment such intention could easily have been expressed. It was not.

Plaintiff contends that because of its 30–60–90 terms of payment the second letter was intended to protect plaintiff from any gap arising because of sales made prior to the effective date of the letter for which payment was not due until after that date. While the original letter did not require Easton to await default before requesting payment by the bank, the course of dealing under that letter reflects that plaintiff and defendant both considered that Easton would not make demand under the letter until default by Arrowhead. We agree therefore with plaintiff's suggestion that the second letter was intended to cover purchases made prior to its effective date but becoming due under plaintiff's "customary terms" after the effective date. The language utilized does create an ambiguity as to the letter's application to sales which have been completed but for which payment is not yet due. We believe the language "on your customary terms" encompasses plaintiff's interpretation. But such an interpretation does plaintiff no good. Here, under plaintiff's customary terms, Arrowhead's full obligation was due on January 10 when it defaulted in its payments. There was no obligation which matured after the effective date (January 13) of the second letter of credit. We can find no basis for interpreting the letter as applicable to obligations matured prior to the effective date of the letter. Plaintiff's protection for those obligations was under the first letter and plaintiff made no demand thereunder.

Judgment affirmed.

SATZ and PUDLOWSKI, JJ., concur.