STATE ex rel. MISSOURI HIGHWAY
AND TRANSPORTATION
COMMISSION, etc., Respondent,

v.

Mary E. MORGANSTEIN, et
al., Defendants,

Ardeis H. Myers, Exceptions of A.H.
Meyers, Jr., Defendants,

Commerce Bank of Kansas City,
Missouri, N.A., Appellant.

No. 66987.

Supreme Court of Missouri,
En Banc.

Jan. 15, 1986.

Rehearing Denied Feb. 18, 1986.

James Borthwick, Michael D. Gibbons, Kansas City, for appellant.

Earl H. Schrader, Jr., Bruce Ring, Gary McMillan, Kansas City, for respondent.

ROBERTSON, Judge.

Commerce Bank appeals from the entry of summary judgment against it by the trial court. The issue is whether the trial court has jurisdiction over Commerce Bank (hereafter the Bank) under Rule 81.11 as a result of a letter of credit issued to the Missouri Highway and Transportation Commission (hereafter the Commission) by the Bank on behalf of Flora E. Myers. The letter of credit was issued to stay the execution of a judgment obtained by the Commission against Mrs. Myers. The trial court ruled that the letter of credit was tantamount to a supersedeas bond and exercised jurisdiction over the Bank, pursuant to Rule 81.11. The Western District reversed. We granted transfer and now treat this case as on original appeal. Mo. Const. art. V, § 10. The judgment of the trial court is reversed.

The full procedural history of this case can be found in two prior appellate opinions. *State of Missouri ex rel. State Highway Commission of Missouri v. Morganstein*, 588 S.W.2d 472 (Mo.1979), and *State of Missouri ex rel. State Highway Commission of Missouri v. Morganstein*, 649 S.W.2d 485 (Mo.App.1983). *See also, Commerce Bank of Kansas City v. Randall*, 675 S.W.2d 687 (Mo.App.1984). Accordingly, the factual summary which follows, though lengthy, is limited to that which is necessary for the disposition of the issues now before the Court.

## I.

In July, 1970, the State Highway Commission petitioned to condemn certain land owned by Ardeis Myers and Flora Myers as tenants by the entirety. In February, 1971, the condemnation commissioners as-

sessed damages for the appropriation at $387,000, and issued the Myers a check in that amount. Both the Myers and the Highway Commission filed exceptions to the award and in May, 1976, the case went to trial.[1] The jury assessed the Myers' damages at $150,000, $237,000 less than the condemnation commissioners' award. As a result, the trial court ordered the Myers to repay the Commission the $237,000 difference, plus interest. The Myers' filed a notice of appeal from this adverse judgment, but failed to file a supersedeas bond.

In December, 1977, the Commission sought execution on the Myers' house. The Myers unsuccessfully moved to quash the execution, and also failed in their efforts to gain a writ of prohibition against the proposed action. On January 5, 1978, a member of the Myers' family, the family's attorneys, the Commission's attorney, and a Bank official met to consider the use of a letter of credit rather than a supersedeas bond to stay execution on the house.

As a result of this meeting, the Bank issued a document which stated, *inter alia,* that it was a letter of credit, effective for one year, (January 5, 1978 to January 5, 1979), and that upon presentation to the Bank of certain documents, the Bank would pay up to $350,000 to the Highway Commission. This document, in pertinent part, reads as follows:

Letter of credit number (of issuing bank) 16513

Date of issue (month/day/year) January 5, 1978

Expiry Date January 5, 1979

Beneficiary

 Missouri State Highway Commission
 State Office Building
 Jefferson City, Missouri

Accountee

 Flora E. Myers
 6335 Ward Parkway

---

1. Both Ardeis and Flora Myers died early in the course of the litigation. Questions involving the substitution of executors, and the liability of the respective estates were addressed in the prior opinions noted above. For the sake of clarity however, we shall continue to refer to the defendants in the underlying action as the "Myers".

Kansas City, Missouri

GENTLEMEN:

WE HEREBY AUTHORIZE YOU TO DRAW ON COMMERCE BANK OF KANSAS CITY, N.A., Kansas City, Missouri UP TO AN AGGREGATE AMOUNT OF US $350,000.00 (Three Hundred Fifty Thousand and 00/100 US Dollars AVAILABLE BY YOUR DRAFT(S) AT Sight TO BE ACCOMPANIED BY

1. A signed order of the Circuit Court of Jackson County, Missouri, directing payment of a judgement [sic] in the amount specified by the Court, or;

2. An affidavit signed by the legal counsel for the Missouri State Highway Commission and a director of Shughart, Thomson & Kilroy, presented on January 5, 1979, stating that no final judgement [sic] has been reached.

NOT–NEGOTIABLE

Partial drawings are permitted ...

. . . . .

All drafts drawn under This Credit are to be endorsed hereon and shall bear the clause "Drawn under COMMERCE BANK OF KANSAS CITY N.A., LETTER OF CREDIT NO. 16513 dated Kansas City, Missouri, January 5, 1978[.] WE HEREBY AGREE WITH THE DRAWERS, ENDORSERS AND BONA FIDE HOLDERS OF DRAFTS DRAWN UNDER, AND IN COMPLIANCE WITH THE TERMS OF THIS CREDIT, THAT SUCH DRAFTS WILL BE DULY HONORED ON PRESENTATION TO THE DRAWEES if drawn and negotiated not later than January 5, 1979[.] This Credit is subject to the "Uniform Customs & Practice for Documentary Credits (1974 Revision), International Chamber of Commerce, Publication No. 290."

[signatures omitted.]

The Bank charged the Myers a fee for the issuance of the letter of credit, and obtained a promissory note from them in the amount of $350,000. The promissory note was to be activated in the event that the Highway Commission drew upon the letter of credit and was secured by various properties, including a first deed of trust on the property which had been subject to the execution. For its part, the Commission agreed to accept the letter of credit in lieu of a supersedeas bond, and also agreed to dissolve its pending execution on the house. Beyond these facts, the parties disagree as to the full scope and effect of the "agreement" reached at this meeting. Upon joint application of the Myers and the Commission, the Western District approved the security pursuant to Rule 81.10.

In June, 1978, the Western District affirmed the trial court's judgment. However, this Court granted the Myers' application for transfer. While the matter was pending before this Court, counsel for the Commission contacted counsel for the Myers and expressed concern that, by its own terms, the letter of credit was due to expire before the appellate process had run its course. The Myers therefore requested that the Bank renew the letter of credit for another year, (until January 5, 1980), and also asked that the stated limit be increased to $362,760 to cover the additional interest that would accumulate. After receiving additional security, the Bank renewed the letter of credit for another year and increased its stated limit to $362,760.

In September, 1979, this Court affirmed the amount of damages awarded for the taking, but remanded the matter for a determination of the liability of each individual defendant with regard to the excess award. *Morganstein, supra,* 588 S.W.2d at 481. With the end of the year approaching, and no final resolution imminent, the Highway Commission again asked that the Myers obtain a one-year extension of the letter of credit. Upon request by the Myers, the Bank renewed the letter of credit in the same face value, with a new expiration date of January 5, 1981.

No significant litigation activity occurred during 1980. In early January, 1981, the Bank extended the letter of credit until January 5, 1982, at the request of the

Myers. The face value of the document as renewed remained at $362,760.

In July, 1981, the trial court on remand found that Mrs. Myers had the use and enjoyment of only one-half of the condemnation proceeds, and entered judgment against her estate in the amount of $119,-500. Both the Commission and Mrs. Myers appealed.

In October, 1981, the Myers' attorneys informed the Commission that when the existing letter of credit expired on January 5, 1982, the renewed letter of credit would be modified to reflect a reduced face value, since the judgment had been cut in half.[2] In early January, 1982, the Myers communicated their desire to renew the letter of credit at a reduced amount to Commerce Bank. On January 4, 1982, the Bank mailed the Commission a copy of the renewed letter of credit, modified to show a face value of $204,950. Counsel for the Commission received word of the reduction sometime in the second week of January, 1982. In correspondence with the Myers' attorneys, counsel for the Commission protested the reduction in face value of the letter of credit. Counsel did not, however, notify the Court of Appeals of its objections to the modified letter of credit.

In January, 1983, the Myers requested and received from the Bank another one-year extension of the letter of credit to January 5, 1984. The face amount of the letter of credit remained at $204,950.

The Western District reversed the trial court's determination and remanded the case with directions that the Circuit Court enter judgment against the estate of Flora Myers for the entire amount of the condemnation overpayment, with interest from February, 1971. *Morganstein, supra,* 649 S.W.2d at 490. In June, 1983, the trial court entered judgment against the estate in the amount of $477,922.81. The Commission then attempted to draw on the

letter of credit by submitting to the Bank the court order described in paragraph 1 of the letter of credit, along with a draft in the amount of $478,494. The Bank refused to honor the draft because it exceeded the $204,950 maximum amount of credit provided by the instrument in its last renewal.

In August, 1983, the Commission filed a motion with the circuit court asking that Commerce Bank be brought into the lawsuit pursuant to Rule 81.11, and that summary judgment be entered against the Bank. The Bank denied jurisdiction and liability. The trial court heard evidence in October, 1983, found in favor of the Commission, and entered judgment against the Bank in the amount of $415,626.58.[3]

On appeal, the Bank contends that the letter of credit was not a supersedeas bond, and does not reflect a surety undertaking on behalf of its customer. The Bank further contends that a surety relationship is a condition precedent to the invocation of Rule 81.11. In response, the Commission asserts that the letter of credit must be viewed as a supersedeas bond, or at least a surety bond, as a result of an alleged three-party agreement reached at the January 5, 1978 meeting which preceded the issuance of the document. The Commission claims that under an oral contract formulated at that meeting, the Bank agreed to secure full payment of any final judgment in the on-going action. As a result of this "oral agreement", the Commission argues, the Bank agreed to become a surety. The Commission asserts that the letter of credit does not embody the entire agreement of the parties, and was not intended to do so. Rather, the Commission suggests that the terms of the agreement may be gleaned from a follow-up letter prepared by the Commission's counsel, the testimony and conduct of the parties, and, when evaluated in the context of this background, the letter

---

**2.** The Commission disputes that it received any such information in October, 1981.

**3.** In September, 1983, the circuit court vacated the June, 1983 judgment because of a miscalcu-

lation of the interest accumulated on the $237,-000 principal. The circuit court then entered judgment against Mrs. Myers' estate in the amount of $415,626.58.

of credit itself.[4] Finally, the Commission contends that when the Bank failed to perform its ultimate obligation as surety, it was susceptible to a Rule 81.11 motion, and the entry of summary judgment.

## II.

 A supersedeas bond is a form of surety contract under which one party (the surety), assures a second party (the creditor), of payment or performance by a third party (the principal). The liability of the surety is secondary in the sense that it arises only upon nonperformance of the underlying promise by the principal. If the principal performs the underlying promise, the surety is not liable. *See generally Stearns on the Law of Suretyship*, 5th ed. 1951 (J. Elder, editor). In general, the obligation of a surety is both measured and limited by the principal's obligation. Bolivar Reorganized School District No. 1, Polk County v. American Surety Co. of New York, 307 S.W.2d 405, 410 (Mo.1957).

Section 400.5–102(4), RSMo 1978, provides that the Uniform Commercial Code provisions relating to letters of credit control unless the parties express an intention to subject the letter of credit to "the 'Uniform Customs and Practice for Documentary Credits', fixed by the thirteenth or by a subsequent congress of the International Chamber of Commerce." By its own terms, the document now under scrutiny is made subject to the Uniform Customs and Practice for Documentary Credits (1974 Revision, International Chamber of Commerce, Publication No. 290) (hereafter UCP). The UCP defines a letter of credit as an arrangement "... whereby a bank (the issuing bank), acting at the request and in accordance with the instructions of a customer (the applicant for the credit), ... is to make payment to or to the order of a third party (the beneficiary), or is to pay, accept or negotiate bills of exchange (drafts) drawn by the beneficiary ...

against stipulated documents, provided that the terms and conditions of the credit are complied with." UCP, General Provisions & Definitions, ¶ (b); *see also* § 400.5–103(1)(a) and (b), RSMo 1978; *Easton Tire Co. v. Farmers & Merchants Bank*, 642 S.W.2d 396, 398 (Mo.App.1982).

In actuality, a letter of credit is the third contract in a complex of three independent contracts. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109, 112 (Tex.1978); *Easton Tire Co., supra*. The first contract is between the issuer and its customer and reflects an agreement to issue the letter of credit. The second contract is between the customer and the beneficiary. The third contract, the letter of credit itself, is between the issuer and beneficiary, and provides that the issuer will make payment to the beneficiary upon presentation of certain documents. *Easton Tire Co., supra; Republic National Bank, supra.*

 The distinguishing feature of a letter of credit is the independence of the contracts which comprise it. *State ex rel. Turco Development v. Lasky*, 581 S.W.2d 935, 937 (Mo.App.1979); *Republic National Bank, supra* at 114; *see also* UCP, *supra*, art. 8 and 9; § 400.5–109 and § 400.5–114, RSMo 1978. No default in performance of the underlying obligation by the customer is necessary to trigger the obligation of the issuer to pay under the letter. *Easton Tire Co., supra.* If the beneficiary tenders the appropriate documents, the issuer must honor the letter regardless of whether the underlying contract has been performed. *Lasky, supra; Republic National Bank, supra; see also* UCP, *supra*, art. 8 and 9; § 400.5–109, and § 400.5–114, RSMo 1978.

 A recent innovation in the use of letters of credit is the "standby credit" which is employed primarily to finance or secure an underlying intangible or monetary indebtedness undertaken by the cus-

---

4. The Commission also contends that the Bank is estopped from denying that the document issued was a surety bond. As the Commission failed to plead or prove this theory below, we

decline to consider this argument. *In Re J.Y.*, 637 S.W.2d 670, 673 (Mo.1982); *Bybee v. Dixon*, 380 S.W.2d 539, 542 (Mo.App.1964).

tomer. *Republic National Bank, supra* at 113; *Easton Tire Company, supra* at 399. Under a standby credit the issuer agrees to pay the beneficiary upon presentation of documentation indicating that the account party has defaulted on a payment obligation. *Republic National Bank, supra.*

■ A standby credit serves much the same purpose as a surety contract—both ensure against the obligor's nonperformance, *Republic National Bank, supra; Bank of North Carolina, N.A. v. Rock Island Bank,* 570 F.2d 202, 206 (7th Cir. 1978). There is, however, a significant difference between the two. The letter of credit creates a *primary* liability on an original obligation and requires payment upon the presentation of the required documents. The contract of surety creates a *secondary* liability on the pre-existing obligation of another and requires the surety to pay only in the event that the principal does not pay. *Bank of North Carolina, N.A., supra; see generally* J. Dolan, the Law of Letters of Credit (1984).

From the foregoing discussion it is clear that supersedeas bonds and letters of credit are distinct entities. It is also clear that the document before the Court is a letter of credit not only because it bears all the hallmarks of a letter of credit, but because it creates in the Bank a primary liability on an original obligation. The Commission suggests, however, that the letter of credit in this case, being a standby letter of credit, functions the same as a surety bond and should therefore be considered as a supersedeas bond within the meaning of the Rule 81.11. It is true, as observed above, that standby letters of credit in general possess a feature which is similar to that of surety bonds. Whether such letters of credit possess, to a greater or lesser degree, characteristics common to suretyship is irrelevant, however, since the only question pertinent in the present case is whether the letter of credit issued here provides a sufficient predicate for the trial court to exercise jurisdiction pursuant to Rule 81.-11.

### III.

■ Rule 81.09 provides that an appeal of a judgment shall stay its execution where the appellant provides the judgment creditor with sufficient security, either in the form of a supersedeas bond or other security approved by the trial court. *See also State ex rel. Brickner v. Saitz,* 664 S.W.2d 209, 212 (Mo.1984). Rule 81.11 states that "by entering into a *supersedeas bond,* the surety subjects himself to the jurisdiction of the trial court and his liability may be enforced on motion for judgment thereon, without the necessity of an independent action." (Emphasis added.) The bond referred to in Rule 81.11 is described in Rule 81.09 and Form 9, Mo.R.Civ.Pro. Both those sources contemplate a surety bond which by its terms remains effective until the judgment is either satisfied or set aside. In sharp contrast, the letter of credit in this case is expressly conditioned to expire at the end of the stated term. The letter of credit issued in the present case is not a supersedeas bond.

The sole basis for the trial court's jurisdiction over Commerce Bank in the present action is Rule 81.11. Rules providing for summary disposition of claims are to be strictly construed. *Judson v. Smith,* 104 Mo. 61, 15 S.W. 956, 959 (1891); *In re Parker's Trust Estate,* 228 Mo.App. 400, 67 S.W.2d 114, 119 (1934). Rule 81.11 refers only to supersedeas bonds. It also refers repeatedly and exclusively to sureties on those bonds. Therefore, to the extent that supersedeas bonds, and suretyship relations in general, are distinct from letters of credit, the rule must be construed to apply solely to the former and to exclude the latter, even though both may be employed as security on appeal. Rule 81.11 must therefore be read to encompass only the former.

It is also clear from the purpose behind Rule 81.11 that it is uniquely suited for use in the context of suretyship. The purpose of the rule is to permit the trial court, once the obligation of the appellant is finally resolved, to impose liability on the surety

without the necessity for a separate action. In the context of letters of credit generally, no such summary procedure would either be necessary or appropriate. It would not be necessary because the letter of credit obligation attaches whenever the specified supporting documents are properly presented. Any refusal by the issuer of the letter of credit to pay the beneficiary at such point would be actionable at that time, with the only material dispute being the propriety of the tender. It would not be appropriate because the summary procedure in question treats the non-party surety as liable for the obligation of its principal, whereas the obligation of an issuer of a letter of credit is independent of that of its customer.

The Commission urges, however, that the terms of the written document have been varied by certain claimed oral representations and modes of conduct. However, the Commission's argument is unavailing, since, in order for Rule 81.11 to apply, there must be a supersedeas bond, which is a contract of suretyship. Neither of the Commission's claims—that the agreement was for an obligation unlimited in both amount and duration—change the document's essential character as a letter of credit. In either event, the Bank's obligation is primary and independent of that of its customer, and contingent only upon the propriety of the underlying documents presented to the Bank for payment. Since the document in question here is a letter of credit and not a supersedeas bond, the trial court is without jurisdiction to proceed against the Bank under Rule 81.11.

The judgment of the trial court is reversed.

BILLINGS, DONNELLY and WELLIVER, JJ., and FLANIGAN, Special Judge, concur.

BLACKMAR, J., dissents in separate opinion filed.

HIGGINS, C.J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

RENDLEN, J., not sitting.

BLACKMAR, Judge, dissenting.

I would not dispute the demonstration in the principal opinion that letters of credit and supersedeas bonds are different legal animals. In this case, however, the parties and the court agreed that a letter of credit could be used in lieu of a conventional supersedeas bond. A transaction of this kind seems to me to be expressly authorized by Rule 81.09, which contemplates alternate forms of security. The pertinent portions of the governing rule reads as follows: (Emphasis supplied).

Rule 81.09

\* \* \* \* \* \*

(b) Form of Bond—Amount. The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award. When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, *unless the court after notice and hearing and for good cause shown fixes a different amount or orders security other than the bond.*

\* \* \* \* \* \*

Rule 81.11

By entering into a supersedeas bond, the surety submits himself to the jurisdiction of the trial court and his liability may be enforced on motion for judgment thereon, without the necessity of an independent action. A copy of the motion, and such additional notice of the motion as the court requires, shall be served like a summons upon a surety who resides and can be found in the county where the judgment was entered, or who maintains an office and agent in said county where

and upon whom such service may be made....

\* \* \* \* \* \*

The appellant bank agreed to issue a letter of credit so that its customers could stay execution on a judgment against them. There is no reason why the bank should not be held to make good on its undertaking, once the judgment has become final. Nor should the judgment creditor be relegated to a separate lawsuit. Relief should be available at the foot of the judgment. There is no procedural or substantive disadvantage to the issuer if its liability is determined in the same lawsuit. We can confidently predict that, so long as the principal opinion stands, judgment creditors will hesitate to accept alternate forms of security.

There is another reason why the full reversal is in error. The record brought to us shows no unequivocal objection to the jurisdiction of the trial court over the person of the defendant. Commerce Bank was before the court. We must assume that it was properly summoned in accordance with the terms of Rule 81.11. If Commerce challenges the service, it has the burden of adducing a record to support its claim of error. It filed no motion to dismiss for want of jurisdiction or to quash service and made it clear at the outset that it disputed only the amount of its liability.[1] Its hesitant arguments about jurisdictional questions were interspersed with arguments touching the merits. Counsel requested findings and conclusions. Counsel placed itself in court.

To the extent that the principal opinion relegates the Highway Commission to a separate action, I dissent. With the case in the posture in which the principal opinion leaves it, I express no opinion as to whether the judgment against the bank should be for the full amount of the judgment against the property owners, or for the face amount of the latest issue of the letter of credit. This issue will be for resolution when and if a separate lawsuit is filed.

---

1. I cannot understand why it has not paid the amount it admits it owes.