Donald W. JONES, et al., Appellants,

v.

**BOATMEN'S FIRST NATIONAL BANK,**
Successor, Respondent.

No. WD 43538.

Missouri Court of Appeals,
Western District.

April 30, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Michael J. Gallagher, Kansas City, for appellants.

David Field Oliver, Kansas City, for respondent.

Before TURNAGE, P.J., and
LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

This action grows out of the financial ruin of the Kroh Brothers real estate development empire. The appellants (Jones & Associates) were limited partners in a general partnership (Park Place) formed to build Park Place, a Denver, Colorado building. Kroh Brothers Investment II was the general partner. As Jones' counsel told the trial court in the petition for damages, "Kroh syndicated the deal." Jones got into the deal by paying some $100,000 by signing $499,000 worth of "capital notes" in which the limited partners were to pay the capital contributions, in increments, over five years. These notes were secured by a letter of credit from the Mercantile Bank. The irrevocable letter of credit was purchased by Jones with the Park Place Partnership as beneficiary. The terms of the letter called for payment to the beneficiary based on a sight draft. The letter of credit was irrevocable, transferable and, payable by the issuer to the beneficiary upon presentation. The letter of credit was based on the declining fixed obligations of Jones to the partnership, the letter of credit could be described as a guaranty letter of credit, "designed to ensure that one or more parties to a contract will perform their duties under it." *Easton Tire Co. v. Farmers & Merchants Bank*, 642 S.W.2d 396, 399 (Mo. App.1982). The letter required no documentation to accompany presentment, thus it was a "clean," as opposed to a "documentary," letter of credit. Section 400.5-102(1), RSMo 1986, and the UCC Code Com-

ment thereon. Three of five payments were made on the contribution of capital notes, "[T]he partnership project turned out to be a loser and in early 1986 the partnership was terminated," according to Jones.

The respondent Centerre Bank, now Boatmen's, loaned some $6 million to the partnership. The loan was secured in part by a pledge of the capital notes and this letter of credit along with other collateral put up by other limited partners who had invested in the venture.

At the time of the Park Place default on the Centerre loan, $99,998 remained unpaid on Jones' notes and corresponding the letter of credit. There is no quarrel with the finding that Park Place was in default on the Centerre loan when Centerre presented the letter of credit and a sight draft to Mercantile for payment.

The appellants' petition for damages alleges a "Partnership Termination and Liquidation Agreement" forgave unpaid capital contributions and provided that the limited partners' letters of credit "shall be returned." The petition admits Centerre was not a "signatory to this Agreement" but "participated in the negotiation" and "was ... fully aware of ... the Agreement." They sued Centerre for conversion, money had and received, breach of warranty, negligent misrepresentation and on several other theories for drawing payment on the letter of credit.

The trial court held the agreement between Kroh Investments II and Jones "had no effect on Centerre's rights as a beneficiary of the Park Place Letter of Credit since Centerre never consented to a modification of the credit ... since the letter ... was a 'clean' letter of credit; was clear and unambiguous in its terms; and by its terms, was not limited to use only in connection with Jones & Associates obligations to Park Place."

To summarize, the points on appeal assert: 1) the subsequent agreement between the appellants and Kroh limited Kroh's rights to collect capital contributions from the Jones partners, so necessarily this extinguished the right of Centerre to draw on this letter of credit used to secure those capital contributions; 2) the trial court erred by ignoring evidence some of the money drawn on the Centerre loan was improperly deposited with another Kroh account; 3) the general partner had no authority to make the original borrowing from Centerre; and 4) Centerre knew Kroh as general partner had breached its fiduciary duty to the appellants as limited partners by arranging, "the release of personal liability with respect to 90% of the limited partners but left Jones & Associates in a position of peril with respect to its Letter of Credit."

All of the points of error are ruled adversely to the appellants. None of the shenanigans of the general partner, including convincing the lender, Centerre, to forgo collection on the letters of other limited partners, could change the status of this letter. It was transferrable. It was a "clean" letter in that it need be accompanied by no other document—"it was payable merely on the presentation of a draft." *East Girard Savings Ass'n v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598, 601 (5th Cir.1979). Centerre as beneficiary had only to present the sight draft, and Mercantile, the issuer, had to "honor the letter regardless of whether the under lying contract," as between Kroh and the Jones partners, "had been performed." *State ex rel. Missouri Highway and Transportation Commission v. Morganstein*, 703 S.W.2d 894 (Mo. banc 1986); *Shaffer v. Brooklyn Park Garden Apts.*, 250 N.W.2d 172, 179 (Minn. 1977).

The primary purpose for using a letter of credit under these circumstances was to assure compliance with the capital contributions of the limited partners. When those notes were not paid the lender-beneficiary could go directly to the issuer of the letter for payment. *Ensco Environmental Services, Inc. v. United States*, 650 F.Supp. 583 (W.D.Mo.1986).

Centerre's right to present the letters was irrevocable, and unchanged by any of the Kroh activities. Centerre never agreed to a change in the letter it had accepted for

making the loan, and, as stated in *Bryant v. Kerr*, 726 S.W.2d 373 (Mo.App.1987):

The letter of credit obtained by the defendants for the benefit of Doretha Bryant was an irrevocable standby letter of credit which, as agreed to by the parties, is governed by Article 5 of the Uniform Commercial Code as adopted by the State of Missouri. *See* Chapter 400.5, RSMo 1986. Under Missouri's code, *unilateral modification or revocation of an irrevocable letter of credit is prohibited* under § 400.5–106(2). This section specifically states:

Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be ·modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent. (Emphasis added.)

The judgment is affirmed.