**REFORM and AFFIRM; and Opinion Filed June 18, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01712-CR

**LARRY DUNN JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

### On Appeal from the 194th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1259904-M

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Brown

Larry Dunn Jr. appeals his conviction for the murder of Cicely Bolden. In two issues on appeal, appellant contends the jury's failure to find that he acted under the immediate influence of sudden passion arising from an adequate cause is against the great weight and preponderance of the evidence and contends the trial court erred in admitting text messages recovered from Bolden's phone because it was seized without a warrant. The State brings a cross-point by which it contends the judgment should be reformed to reflect that appellant pleaded guilty. We reform the trial court's judgment to reflect that appellant pleaded guilty and, as reformed, affirm.

### BACKGROUND

Appellant was indicted for murder for the stabbing death of Bolden. Appellant met Bolden through a chat line, which led to a sexual relationship that lasted a few weeks. The stabbing occurred about a week after appellant learned Bolden was HIV positive. Appellant

initially pleaded not guilty and proceeded with a jury trial. After the State rested, appellant changed his plea to guilty.

Shortly after Bolden's death, Detective Brian Tabor learned from Bolden's family and friends that she had been seeing appellant. Appellant agreed to come in and talk to the detective the night of the stabbing. During the guilt/innocence phase, a video recording of appellant's interview with Tabor was admitted into evidence. Appellant initially admitted to Tabor that he was at Bolden's apartment earlier that day, but denied having anything to do with her death. Appellant consented to a search of his car, and police detected blood in it. After Tabor informed appellant about the blood, appellant told Tabor he had been enraged because Bolden gave him HIV and she knew she had HIV. Appellant said he wanted to make Bolden pay. He stated that "killing her wasn't on the menu, but that was just how it ended up." She started talking about HIV and he just lost it. He went in the kitchen, got a steak knife, and stabbed her. Appellant said he did not go over there to kill her, but decided to when she started talking about HIV. Appellant said he felt like "she killed me, so I killed her."

A few days after Bolden's death, appellant also gave a jailhouse interview to a television reporter for the local Fox news station. That video recording was admitted into evidence at guilt/innocence. Appellant told the reporter that on the day of Bolden's death, he wanted to go over to Bolden's apartment to maybe slap her around. He stated that, in his mind, Bolden basically killed him and he wanted to know why. She downplayed it, and appellant "smashed" her. Appellant said he regretted his actions not because of anything that had to do with Bolden or her family, but because of how it affected his son, wife, and mother.

At the punishment phase, appellant testified and indicated that before he and Bolden met in person they talked on the phone for about a week. The second time they met in person, they had sex and had sex other times after that. One day, while they were talking on the phone,

Bolden mentioned a TV show she was watching in which a girl told a guy she was having a relationship with that she was HIV positive and that how it happened was funny. Appellant told her it was not funny. He testified the conversation threw up a red flag for him. A couple days later, appellant asked Bolden over the phone if she had HIV. Bolden initially denied it, but later in the conversation admitted it was true.

At that point, appellant felt like he had HIV and his wife probably had it. He kind of felt suicidal and was distraught. He tried to not have any contact with Bolden. The day after Bolden confirmed she was HIV positive, appellant went out of town for the Labor Day weekend with his wife. Bolden tried to contact him to find out why he was not talking to her. About a week after learning Bolden was HIV positive, appellant went to her apartment. She knew he was coming. He wanted her to explain to him in person why she did it. She let him in and went to her bedroom. Appellant followed her and asked, "What's up?" Bolden was silent, but started to perform oral sex on appellant. Afterward, appellant told her she still had not told him why. Then Bolden "caught a real attitude like it just annoyed her to death" he was still asking her about it. She told appellant she basically did him a favor, because the man who gave it to her did not tell her and she found out from the doctor. Appellant described how Bolden's demeanor changed to "[a]ttitude, just pure attitude." Appellant had never seen her that way before. As he told the detective in their interview, appellant became enraged the more Bolden talked about it. She "seemed so nonchalant" and did not care if he got HIV or not.

Appellant acknowledged that in his interviews, he said he was going to make Bolden pay. He meant he may have wanted to go over there and yell at her, maybe break her car windows or slash her tires. On cross-examination, he admitted he might have wanted to slap her around. But he did not have any intentions on ending her life. Appellant stated that at the time he gave the interview to Fox 4 everything was so new and fresh. He had not had much time to reflect or

calm down. Appellant stated he said some things he regretted and did not mean. He explained that Bolden told him "you are not the first and you won't be the last." He took this to mean that she was not going to stop "basically targeting [men] to give HIV to." Bolden never expressed any remorse to him other than in a text message.

The prosecutor showed appellant State's Exhibit 69, a copy of text messages appellant and Bolden exchanged between September 2 and September 6, the day of Bolden's death. Bolden told appellant she knew she was wrong and she apologized. Appellant told her the situation had him "really fucked up." On September 5, appellant's messages became sexually graphic and indicated appellant still wanted a sexual relationship with Bolden. Appellant testified he could see how Bolden could have interpreted the messages to mean that he came over on September 6 for sex.

After they had sex that day, appellant told Bolden he was going to get something to drink. He did not plan to get a knife, but when he saw one in the kitchen, he put it in his pocket. He lay down beside Bolden in bed, took the knife out of his pocket, and stabbed her twice in the neck. Bolden did not see the knife until it was sticking out of her throat. Appellant testified that he did not know what he had been thinking; he had been in a "real serious amount of just rage and anger." Bolden bled a lot after the stabbing. Appellant did not try to get help for Bolden's injuries and knew she would probably not be able to call 911. Appellant knew Bolden's children lived with her and were at school. He admitted he left Bolden there to die and for her children to find her. Appellant sent Bolden text messages after he killed her and admitted he was possibly trying to make it look like he had not seen Bolden that day.

The State asked appellant about a letter he wrote to his wife from jail several months after he killed Bolden. Appellant wrote that he wondered how hell was treating Bolden. The prosecutor asked about two other letters appellant had written the month of trial. In both letters,

–4–

appellant called Bolden either "bad" or "evil" and said she provoked her death.  In his testimony, appellant denied that he wanted to get revenge against Bolden.

The court's charge asked the jury if appellant caused Bolden's death under the immediate influence of sudden passion arising from an adequate cause.  The jury answered no and assessed appellant's punishment at forty years' confinement.  This appeal followed.

## SUDDEN PASSION

In his first issue, appellant contends the jury's finding that he did not act under the immediate influence of sudden passion arising from an adequate cause is against the great weight and preponderance of the evidence.  Appellant maintains the evidence does not support the jury's finding because it shows he went to Bolden's house unarmed to seek an explanation for why she failed to tell him she was HIV positive.  Her response that day caused him to become enraged and act out of sudden passion.  He seeks a new trial on punishment.

Murder is a first-degree felony.  TEX. PENAL CODE ANN. § 19.02(c) (West 2011).  At the punishment phase of a murder trial, the defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  *Id.* § 19.02(d).  If the defendant proves the issue by a preponderance of the evidence, the offense is a felony of the second degree.  *Id.*  "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed which passion arises at the time of the offense and is not solely the result of former provocation.  *Id.* § 19.02(a)(2).  "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.  *Id.* § 19.02(a)(1).  When we review a jury's rejection of an issue on which the defendant had the burden of proof by a preponderance of the evidence, the standard of review is whether, after considering all the evidence relevant to that issue, the finding is so against the great weight and preponderance of

the evidence as to be manifestly unjust. *Naasz v. State*, 974 S.W.2d 418, 421 (Tex. App.—Dallas 1998, pet. ref'd) (citing *Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990)).

There was some evidence appellant acted under the immediate influence of sudden passion. He did not go to Bolden's apartment with a weapon. Appellant testified he went to see her to get an explanation for why she had not told him about the HIV and did not plan to kill her. He described how her nonchalant attitude about the situation enraged him that day and how he "lost it" and did not know what he was thinking at the time. But there was other evidence to suggest appellant acted as a result of former provocation and went to Bolden's apartment to seek revenge, having sent Bolden texts she could have interpreted to mean he came over for sex. At that point, he had known for about a week that Bolden had HIV. In interviews, appellant said he had wanted to make Bolden pay. He told the reporter he had the idea he might slap Bolden around when he went to see her. When he got the knife from the kitchen, he hid it in his pants and conducted a surprise attack. Appellant's lack of remorse in the days following Bolden's death could also be seen as inconsistent with his having acted out of sudden passion.[1] The issue of whether appellant acted under the immediate influence of sudden passion hinged on the jury's evaluation of appellant's credibility, and we defer to their resolution of the issue. After reviewing the evidence, we cannot conclude the jury's finding that appellant did not act under the immediate influence of sudden passion arising from an adequate cause is so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule appellant's first issue.

---

[1] Appellant maintains his text messages before the stabbing and his interviews afterward are not relevant to his state of mind on the day in question. We disagree.

## ADMISSION OF TEXT MESSAGES

In his second issue, appellant contends the trial court erred in admitting the text messages between him and Bolden recovered after a warrantless search of Bolden's cell phone. Appellant relies on *Riley v. California*, 134 S. Ct. 2473, 2493 (2014), in which the Supreme Court held that a warrant is generally required before a search of the contents of a cell phone. The State responds that appellant does not have standing to complain about a warrantless search of Bolden's phone.

Police found Bolden's cell phone in her apartment after her death. The text messages were admitted into evidence during the testimony of Detective Tabor. Defense counsel argued that a warrant was required before that information could be used against appellant. The State argued no warrant was required because the messages were found on Bolden's phone and appellant had no right to privacy once he sent the messages to her phone. The trial court overruled the objection and admitted the evidence.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.* Proof of a reasonable expectation of privacy is at the forefront of all Fourth Amendment claims. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). A person has standing to contend that a search was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as reasonable or legitimate. *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). A person has a subjective expectation of privacy in the contents of his own cell phone and this expectation of privacy is one that society recognizes as reasonable and legitimate. *Id.* at 405–06 (factors that courts use in deciding whether person has reasonable expectation of privacy in

searched object include whether defendant had proprietary or possessory interest in object searched and whether he had right to exclude others from object).

Appellant does not attempt to argue that he had any subjective expectation of privacy in the cell phone belonging to Bolden. Instead, he argues he had an expectation of privacy in the text messages he exchanged with Bolden.[2] But the messages were found on Bolden's phone. Fundamentally, appellant's complaint is about the seizure of a phone that did not belong to him. We have found no cases in support of the proposition that an individual can have an expectation of privacy in the cell phone of another. *See United States v. Powell*, 732 F.3d 361, 375 (5th Cir. 2013) (defendant who denied ownership of cell phone lacked standing to later challenge admissibility of records it contained), *cert. denied*, 134 S. Ct. 1326 (2014); *see also Granville*, 423 S.W.3d at 409 (noting that person may lose expectation of privacy in personal cell phone if he lends it to others). Further, we think it clear that any claim of an expectation of privacy in text messages sent to another person and found on that person's cell phone would not be one society is prepared to recognize as reasonable and legitimate. Appellant did not have standing to complain of the warrantless search of Bolden's cell phone. The trial court did not abuse its discretion in overruling appellant's objection to admission of the text messages. We overrule appellant's second issue.

### STATE'S CROSS-POINT

In a cross-point, the State asks us to reform the trial court's judgment to reflect that appellant pleaded guilty. The judgment indicates appellant pleaded not guilty. An appellate court has the power to correct or reform the trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *See Asberry v. State*, 813 S.W.2d

---

[2] We note appellant presented no evidence regarding any expectation of privacy in the text messages.

526, 531 (Tex. App.—Dallas 1991, pet. ref'd).   Accordingly, we reform the trial court's

judgment to reflect that appellant pleaded guilty and, as reformed, affirm.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.

131712F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LARRY DUNN JR., Appellant

No. 05-13-01712-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1259904-M.
Opinion delivered by Justice Brown. Justices
Bridges and Fillmore participating.

Based on the Court's opinion of this date, we **REFORM** the trial court's judgment to
reflect that appellant's plea to the offense was guilty.

As reformed, we **AFFIRM** the trial court's judgment.

Judgment entered this 18th day of June, 2015.